# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2663

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JACK A. DAY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 CR 13—**John C. Shabaz**, *Judge.*

_____

ARGUED FEBRUARY 17, 2005—DECIDED AUGUST 12, 2005

_____

Before POSNER, RIPPLE and MANION, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Jack Day pleaded guilty to one count of making false statements with respect to the actual mileage of a motor vehicle in violation of 49 U.S.C. §§ 32705(a)(2) and 32709(b). Mr. Day was sentenced to 25 months' imprisonment and ordered to pay restitution in the amount of $39,875. In this appeal, Mr. Day challenges his sentence as well as the amount of restitution. For the reasons set forth in the following opinion, we reverse the judgment of the district court with respect to the order of restitution. We further order a limited remand consistent

with this court's decision in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), *petition for cert. filed*, No. 04-10402 (May 26, 2005). In all other respects, we affirm the judgment of the district court.

# I

## BACKGROUND

From June 2000 through March 2002, Mr. Day was involved in a scheme to profit from the resale of used vehicles by altering the odometers of the vehicles and misrepresenting the mileage at the time of sale. On January 13, 2004, Mr. Day was charged with three counts of knowingly and willfully resetting and altering vehicle odometers, in violation of 49 U.S.C. §§ 32703(2) and 32709, as well as four counts of knowingly and willfully making false statements relating to the actual mileage of a motor vehicle, in violation of 49 U.S.C. §§ 32705(a)(2) and 32709(b). Mr. Day initially entered a plea of not guilty on all the charges. However, he later pleaded guilty, pursuant to an agreement, to Count 5 of the indictment, one of the counts of making false statements with respect to the mileage of a vehicle. According to the plea agreement, Mr. Day agreed

> to pay restitution for all losses relating to the offense of conviction and all losses covered by the same course of conduct or common scheme or plan as the offense of conviction. The exact restitution figure will be agreed upon by the parties prior to sentencing or, if the parties are unable to agree upon a specific figure, restitution will be determined by the Court at sentencing.

R.10 at 2.

At the plea hearing, Mr. Day admitted only those facts related to Count 5 of the indictment. Specifically, Mr. Day

affirmed that, on September 28, 2001, he knowingly and willfully had given false information relating to the mileage of a 1993 Ford truck: Mr. Day represented that the mileage was 59,645 when, in actuality, the mileage was 159,591. During the plea hearing, no other vehicles or other aspects of the criminal scheme were discussed or were admitted by Mr. Day. The district court accepted the plea agreement.

The United States Probation Office ("Probation Office") then prepared a Presentence Report ("PSR") for Mr. Day. The starting point for Mr. Day's sentence calculation was United States Sentencing Guidelines ("U.S.S.G.") § 2N3.1(a) (2000), which provides for a base offense level of six. However, § 2N3.1(b) includes a cross-reference to § 2F1.1 (Fraud and Deceit) if the offense involved more than one vehicle. Relying on other charged and uncharged conduct attributed to Mr. Day, the Probation Office determined that Mr. Day's offense included more than one vehicle and therefore employed § 2F1.1 in the calculation.

Like § 2N3.1, the base offense level for § 2F1.1 is six. However, § 2F1.1 also contains a chart that increases the offense level according to the total amount of loss. To determine the amount of loss, the Probation Office considered the losses associated with the sale of all of the vehicles involved in the roll-back scheme. The Probation Office estimated that the loss associated with the sale of these vehicles was more than $20,000 but less than $40,000, which corresponded to a four-level increase and resulted in an offense level of ten. The PSR then recommended adding two levels pursuant to § 2F1.1(b)(2)(B) because the offense involved more than one victim. Finally, the PSR recommended a two-level downward departure for Mr. Day's acceptance of responsibility, which returned Mr. Day's offense level to ten. This offense level, in conjunction with Mr. Day's criminal history level,

corresponded to a guideline range of 21 to 27 months.[1] The PSR also recommended that Mr. Day be ordered to pay restitution in the amount of $39,875.

Mr. Day did not contest the guideline calculation; however, he did submit a written objection to the restitution recommendation. Mr. Day claimed that the amount of restitution was excessive based on the amount of loss sustained by each victim as well as on his financial resources, financial needs and earning ability. Mr. Day filed objections to this amount on the ground that he had no present or future financial resources that would allow him to pay such a sum. Mr. Day stated, as part of his objections, that he wished to pay full restitution if he were to become able to do so. However, his current economic circumstances did not allow for the payment of any amount of restitution, nor did he anticipate being able to pay the full amount of restitution in the foreseeable future. Consequently, he requested that the court order only nominal periodic payments towards his restitution pursuant to 18 U.S.C. § 3664(f)(3)(B).

In the Addendum to the PSR, the Probation Office acknowledged that it would be difficult for Mr. Day to pay restitution; it nevertheless recommended that the court order the full amount of restitution. The Government, as well, acknowledged the difficulty Mr. Day would have in paying the recommended restitution amount; at sentencing the assistant United States attorney stated:

> Although it probably isn't likely that the defendant will ever be able to repay, assuming the defendant is not incarcerated for the rest of his life . . . you never know what can happen with someone's financial circum-

---

[1]   An offense level of six would have corresponded to a guideline range of 9 to 15 months.

> stances . . . . He could win the lottery. He could come into money in some other way and we just want to have the order in place.

Tr.II at 8. The Government therefore urged the district court to order the restitution amount recommended in the PSR.

At sentencing, the district court recounted Mr. Day's criminal activities:

> The Court notes that from on or about June 2000 to March 2002 the defendant was involved in a scheme to profit from the resale of used vehicles by tampering or rolling back the odometers and/or misrepresenting the actual mileage at the time of sale, submitting multiple false applications to the Wisconsin Department of Transportation. The results of the investigation have revealed that he was responsible for rolling back and misrepresenting approximately 1,430,000 miles of use on 19 vehicles.

*Id.* at 9. It then adopted that sentencing calculation set forth in the PSR and imposed a sentence of 25 months. The district court similarly accepted the PSR's restitution recommendation and ordered Mr. Day to pay restitution in the amount of $39,875, due and payable immediately. In sentencing Mr. Day, the district court ordered Mr. Day "to pay restitution in the amount of $39,875 which is due and payable immediately to the Clerk of Court for the Western District of Wisconsin to be disbursed to the victims in the amended Appendix A which is attached to your Judgment of Conviction." *Id.* at 11. The district court, however, refused to impose a fine: "The defendant has neither the means nor the earning capacity to pay a fine without impairing his ability to pay the mandatory restitution and support himself upon release." *Id.*

Mr. Day timely appealed his sentence and the restitution order.

## II

## DISCUSSION

### A. Application of *Booker*

Mr. Day first argues that the district court's imposition of a sentence that was based upon facts that neither were admitted nor found by a jury runs afoul of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). However, Mr. Day did not argue to the district court that the imposition of the sentence would violate his Sixth Amendment rights. Consequently, our review is for plain error. *See Booker*, 125 S. Ct. at 769; *Paladino*, 401 F.3d at 481. We may review an error not raised below under the following circumstances: There must be (1) "error," that is (2) "plain," and that (3) "affect[s] substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks and citations omitted). If these three conditions are met, the court may exercise its discretion to notice a forfeited error, but only if it (4) "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 732 (internal quotation marks and citations omitted).

Mr. Day admitted to rolling back the odometer on one Ford truck and to misrepresenting the actual mileage on the truck when it was resold. The district court concluded, however, based on facts which Mr. Day did not admit, that more than one vehicle was involved, that the loss was in the range of $20,000 to $40,000, and that more than one victim was harmed. These findings resulted in a six-level increase in offense level and a correspondingly higher guideline range for Mr. Day.

The Government concedes that, "[i]n light of *Booker*, the imposition of a mandatory Guideline sentence in this case is error that was plain in the sense that it is now clear or obvious." Appellee's Supp. Br. at 4. However, the Government maintains that Mr. Day cannot establish the third prong of the plain error test because "he cannot establish that he would have received a different sentence had the Guidelines been advisory, rather than mandatory." *Id.* at 5. The Government points to the fact that the district court, in sentencing Mr. Day, commented that " 'this is a much more serious activity than either counsel appear to understand.' " *Id.* (quoting Tr.II at 9); *see also* Tr.II at 10. Furthermore, the Government argues, the district court sentenced Mr. Day near the top of the applicable guideline range, which suggests it was not inclined to give Mr. Day the benefit of the doubt.

It is true that the district court gave no indication that, if unfettered by the Guidelines, it would have imposed a lighter sentence; indeed, as noted above, there is some evidence to the contrary. However, the district court's actions here do not remove all doubt as to "what the district judge would have done with additional discretion"; for instance, the district court did not indicate on the record "that, if it had more leeway, it would have imposed a higher sentence." *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005). Nor were there other circumstances present, such as a minimum term of imprisonment mandated by statute, that prevented the district court from imposing a lighter sentence. *See id.* at 866 (referring to one of the defendants in *Paladino* who received a sentence at the statutory minimum and stating that "[n]othing in *Booker* gives a judge any discretion to disregard a mandatory minimum, so there was no need to speculate about prejudice"). Because we cannot be certain of the approach the district court would have

taken if not constrained by the Guidelines, "it is important to ask the district judge's opinion." *Id.* at 867. Therefore, in accordance with our recent decision in *Paladino*, 401 F.3d at 483, we retain jurisdiction and direct a limited remand to permit the sentencing court to determine whether it would have imposed the same sentence had it known that the Guidelines were merely advisory.

## B. Restitution Amount

Mr. Day also challenges the district court's restitution order.[2] The authority for restitution for the crime to which Mr. Day pleaded guilty is found at 18 U.S.C. § 3663, which

---

[2] We have made clear in prior cases that restitution is a civil remedy to which "the sixth amendment does not apply." *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005). Similarly, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 125 S. Ct. 738 (2005), have no application to restitution orders. *See George*, 403 F.3d at 473. We have held that *Booker* does impact a district court's imposition of restitution as a condition of supervised release, pursuant to U.S.S.G. § 5E1.1. *See United States v. Pree*, 408 F.3d 855, 857-58 (7th Cir. 2005). In the present case, the district court did condition Mr. Day's supervised release on the payment of restitution, *see* R.12 at 3; however, because of our disposition of the restitution issue, it is unnecessary to remand in accordance with *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), *petition for cert. filed*, No. 04-10402 (May 26, 2005), for the district court to determine whether it "would have imposed the condition of restitution upon [Mr. Day's] supervised release had it understood the guidelines to be advisory, rather than mandatory." *Pree*, 408 F.3d at 876. As part of the remand on restitution, however, the district court should treat U.S.S.G. § 5E1.1 (requiring a court to condition supervised release on payment of restitution) as advisory, not mandatory.

originally was enacted through the Victims and Witnesses Protection Act ("VWPA"). However, § 3663's scope and enforcement mechanism were altered significantly with the adoption of the Mandatory Victim Restitution Act ("MVRA") in 1996. Because both of these laws impact Mr. Day's restitution order, we briefly outline the operative provisions of each below.

### 1.  Statutory Language

The VWPA was enacted in 1982 for the purpose of granting federal courts the authority to order restitution in criminal cases, apart from probation. Section 3663(a)(1) allowed, but did not mandate, restitution for most crimes: "The court, when sentencing a defendant convicted of an offense under this title . . . *may* order . . . that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1) (1995) (emphasis added).[3] Although restitution was discretionary, 18 U.S.C. § 3664(a) mandated that the court consider certain factors in arriving at the restitution amount:

> The court, in determining whether to order restitution under section 3663 of this title *and the amount of such restitution*, shall consider the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a) (1995) (emphasis added).

---

[3]  18 U.S.C. § 3663(a)(3) (1995) provided that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."

In 1996, Congress enacted the MVRA which amended §§ 3663 and 3664 of the VWPA and also added § 3663A. With respect to the amendments to § 3663, Congress retained most of the language of the former § 3663(a), but removed from § 3663's scope a wide range of crimes now covered by § 3663A.[4] The amended § 3663 also contains a modified version of the former § 3664(a); thus § 3663(a)(1)(B) now contains the considerations that previously had been set forth in § 3664:

> (B)(i) The court, *in determining whether to order restitution* under this section, shall consider—
>
> > (I) the amount of the loss sustained by each victim as a result of the offense; and

---

[4]  The amended version of § 3663(a)(1)(A) provides as follows:

> The court, when sentencing a defendant convicted of an offense under this title, section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863) (but in no case shall a participant in an offense under such sections be considered a victim of such offense under this section), or section 46312, 46502, or 46504 of title 49, other than an offense described in section 3663A(c), may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate. The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.

18 U.S.C. § 3663(a)(1)(A).

The amended § 3663 retained, in its entirety, the language of § 3663(a)(3) ("The court also may order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."). The application of § 3663(a)(3) to the present case is discussed *infra* at note 7.

> (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3663(a)(1)(B)(I) (2005) (emphasis added). Section 3663 no longer contains its own procedure for enforcement of the restitution awards; instead, 18 U.S.C. § 3663(d) provides that "[a]n order of restitution made pursuant to this section shall be issued and enforced in accordance with section 3664."

The MVRA also created a wholly new section, § 3663A, which *requires* district courts to order restitution with respect to a wide range of crimes:

> Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court *shall order*, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

18 U.S.C. § 3663A(a)(1) (emphasis added). For its part, § 3663A(c) provides:

> (c)(1) This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense—
>
>> (A) that is—
>>
>>> (i) a crime of violence, as defined in section 16;
>>>
>>> (ii) an offense against property *under this title*, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; or

(iii) an offense described in section 1365 (relating to tampering with consumer products); and

(B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

18 U.S.C. § 3663A(c)(1) (emphasis added).[5]

In addition to mandating restitution for many crimes, the MVRA also substantially amended § 3664, which now sets forth the "[p]rocedure for issuance and enforcement" of restitution orders pursuant to both § 3663 and § 3663A. The pertinent provision of 18 U.S.C. § 3664 for this case is § 3664(f). Subsection (1) states that "[i]n each order of restitution, the court *shall order* restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (emphasis added). A court, however, may weigh such considerations when setting a schedule for payment of the restitution amount; § 3664(f)(2) provides:

(2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—

---

[5]  Although Mr. Day's crime certainly is "an offense against property," it is not "an offense against property under this title"— Title 18; his crime arises under Title 49. Consequently, as recognized by both parties, *see* Appellant's Br. at 18 n.1; Appellee's Br. at 24 n.4, Mr. Day's crime does not fall within the mandatory provision of § 3663A, but instead the discretionary language of § 3663.

(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;

(B) projected earnings and other income of the defendant; and

(C) any financial obligations of the defendant; including any obligations to dependents.

18 U.S.C. § 3664(f)(2).


## 2. Reconciling the Statutory Language

The amendments to § 3664 set forth above, read in conjunction with the language of § 3663, appear to create some tension with respect to the criteria employed by district courts in deciding whether to order restitution and those employed by a district court in deciding the amount of the restitution order. Specifically, restitution pursuant to § 3663 is discretionary; and, in determining whether to exercise this discretion, the district court is required to consider the financial resources of the defendant. However, § 3663(d) also requires that any restitution order be issued and enforced in accordance with § 3664. Section 3664, in contrast to § 3663, forbids a district court from considering the economic circumstances of a defendant in fashioning a restitution award; rather, the district court must order restitution in the "full amount" of the victim's losses. 18 U.S.C. § 3664(f)(1)(A). Under § 3664, a district court may consider the defendant's financial circumstances only in determining the method of payment and in setting the payment schedule.

**a.**

Little has been said in case law about the interaction between these sections.[6] In dicta, a district court for the Southern District of New York recognized this "tension" and offered a possible resolution of the provisions:

> There appears to be some tension between the discretionary language in Section 3663 and the mandatory language in Section 3664 of Title 18, United States Code. Restitution awards under the MVRA are implemented and enforced according to the provisions of Section 3664. 18 U.S.C. §§ 3663(d) and 3663A(d). Section 3664 provides:
>
> > In *each order* of restitution, the court shall order restitution to *each victim* in the *full* amount of each victim's losses as determined by the court and *without consideration of the economic circumstances of the defendant.*
>
> *Id.* § 3664(f)(1)(A) (emphasis supplied). The tension between Sections 3663 and 3664 may be resolved in the following way. Once the court has determined that restitution should be awarded under either Section 3663 or Section 3663A, the court is required to award restitution for the full amount of the victim's losses. In other words, the court's first determination is *whether* there is to be an award of restitution. In making this discretionary determination under Section 3663, the court must consider the defendant's financial circumstances. *Id.* § 3663(a)(1)(B)(i)(II). Once the decision to award restitu-

---

[6]   This, no doubt, results in large part from the fact that so many crimes now are covered by the mandatory restitution provisions of § 3663A.

> tion has been made, however, restitution in the full amount of the victim's loss is required. The court should, of course, take the defendant's financial circumstances into account in setting the payment schedule. *Id.* § 3664(f)(2)(A)-(C).

*United States v. Cummings*, 189 F. Supp. 2d 67, 72 (S.D.N.Y. 2002). This approach was applied by the same district court in *Ferrarini v. United States*, 2002 WL 1144377, at *6 (S.D.N.Y. May 30, 2002).

No court of appeals has addressed directly the interaction between § 3663 and § 3664 after passage of the MVRA. However, some courts of appeals have discussed the MVRA's amendments to § 3664 and the meaning of those amendments. These discussions largely have arisen in the context of cases in which the key issue is the retroactive application of the MVRA to individuals who stand convicted of crimes that fall within § 3663A's coverage and any ex post facto implications arising therefrom. Consequently, these cases do not discuss the interaction of the permissive restitution language of § 3663 with the mandate of full restitution contained in § 3664. Nevertheless, these cases are helpful in understanding the amended § 3664. For instance, in *United States v. Alalade*, 204 F.3d 536 (4th Cir. 2000), the Fourth Circuit stated that,

> with passage of the MVRA, Congress completely deleted the language of the VWPA affording the district court discretion . . . to consider any factor it deemed appropriate in determining the amount of restitution to be ordered, and replaced it with language requiring the district court to order restitution in the full amount of loss to each victim as determined by the district court.

*Id.* at 540 (citations omitted). Additionally, that court noted that "in contrast to the VWPA, the MVRA does not contain any language requiring the district court, in determining the

total amount of restitution to be ordered, to consider the financial resources of the defendant." *Id.*; *see also United States v. Karam*, 201 F.3d 320, 329 (4th Cir. 2000) (stating that "[t]he [MVRA] substantially amended the 1992 VWPA by requiring district courts to impose 'full' restitution without considering the defendant's economic circumstances" and observing that this process is a reverse of that followed under the VWPA in which "the court must first consider the defendant's financial circumstances before setting the amount of restitution to be paid"). These observations have been made by other courts of appeals as well. *See, e.g., United States v. Richards*, 204 F.3d 177, 212 (5th Cir. 2000) ("The MVRA amended the [VWPA]. 18 U.S.C. §§ 3663-3664. Before the amendments to the VWPA, the statute required a court to consider a defendant's ability to pay in setting the amount of a restitution order. As amended, the statute provides that 'the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.' 18 U.S.C. § 3664(f)(A)."), *overruling on other grounds recognized by United States v. Longoria*, 298 F.3d 367 (5th Cir. 2002).

In other contexts, as well, courts have commented upon the differences between the VWPA and the MVRA. In deciding a VWPA case prior to the passage of the MVRA, the Eleventh Circuit stated that "[t]he VWPA provisions for restitution were substantially amended by the [MVRA] which became effective April 24, 1996. Prior to the 1996 amendment, awarding restitution was discretionary and the court was required to consider . . . the financial resources of the defendant"; however, "[t]he amended provisions for restitution mandate that the district court order restitution in the full amount of the victim's loss without considering the defendant's financial resources." *United States v. Thayer*,

204 F.3d 1352, 1357 & n.7 (11th Cir. 2000) (internal quotation marks and citations omitted).

Finally, in applying the amendments to § 3664 to individuals convicted of crimes that fall within § 3663A, our own court has observed that § 3664 mandates "full" restitution without regard to a defendant's financial resources. We noted, for instance, in one case that "the MVRA forced the court to impose the full amount of restitution on [the defendant] without any reprieve for his inability to pay." *United States v. Newman*, 144 F.3d 531, 536 n.5 (7th Cir. 1998). Furthermore, in *United States v. Szarwark*, 168 F.3d 993 (7th Cir. 1999), we stated that, under the MVRA, "district courts no longer are permitted to consider a defendant's financial circumstances when determining the amount of restitution to be paid." *Id.* at 997.

With respect to case law from the courts of appeals, therefore, there does not appear to be an explanation of how to read § 3663 in tandem with § 3664. However, the courts of appeals have spoken with one voice with respect to the inability of a district court, after the MVRA amendments to § 3664, to consider the financial resources of the defendant in entering a restitution order: A district court must order full restitution in an amount equal to the victim's loss without reference to the defendant's financial circumstances.

Like much of the case law, the legislative history does not speak directly to the relationship between the permissive restitution language of § 3663 and the mandate of full restitution in the amended § 3664. However, the legislative history does offer some guidance on Congress' reading of the statutory language. First, there is no question that Congress intended that orders of restitution pursuant to § 3663 remain discretionary. *See* S. Rep. 104-179, at 19 (1996), *reprinted in* 1996 U.S.C.C.A.N. 924 ("Moreover, as noted, except to the extent that this act would make restitution

mandatory under certain circumstances, the committee intends no change in the range of statutes covered by *permissive* restitution under 18 U.S.C. 3663." (emphasis added)). It is equally clear that Congress intended the amendments to § 3664 to apply to restitution orders under both § 3663 and § 3663A and that this uniformity applied to "both the amount of restitution owed to each victim and the terms of repayment." *Id.* at 20 ("The procedures contained in this section are intended to provide a streamlined process for the determination of both the amount of restitution owed to each victim and the terms of repayment based on a reasonable interpretation of the defendant's economic circumstances."). Thus, the mandate of "full" restitution applies with equal force to restitution orders pursuant to § 3663 and to § 3663A.

### b.

Although none of the sources discussed above—the statutory language, the case law or the legislative history—gives explicit direction with respect to the way courts should read the permissive language of § 3663 in conjunction with the mandate of § 3664, we believe that the interpretation of these sections suggested by the district court for the Southern District of New York is both true to the entire statutory language and consistent with the case-law readings of § 3664 and with the statements made by Congress in enacting the MVRA. According to this interpretation, the permissive language of § 3663 is read narrowly: For offenses covered by § 3663, the district court has the discretion to order ("may order") restitution; in determining "whether" to exercise that discretion, the district court "shall" be guided by the considerations set forth in § 3663(a)(1)(B). However, once the district court determines that restitution ought to be made, § 3664 comes into play and, for its part, mandates that the

court order "full" restitution, "without consideration of the economic circumstances of the defendant."

This reading of § 3663 and § 3664 has several advantages. First, it is true to the basic principles of statutory interpretation that, in interpreting a statute, we look primarily to the language of the statute, *see, e.g., Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 954 (7th Cir. 2004), and, in doing so, attempt to give effect to every word or provision, *see, e.g., Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 575 (7th Cir. 2001). There is no question that this reading gives full effect to the language employed by Congress. When Congress amended § 3663 to include the considerations previously located in § 3664(a), Congress did not use exactly the same wording as it had in the former § 3664(a). Under the old version of § 3664, courts were to consider the financial circumstances of the defendant both "in determining whether to order restitution" and also in determining the "*amount* of such restitution." 18 U.S.C. § 3664(a) (1995) (emphasis added). However, the new § 3663(a)(1)(B) requires courts to consider these factors only in determining whether to order restitution; all reference to the amount of restitution has been omitted.

Furthermore, this reading is consistent with Congress' stated intentions in adopting the MVRA and with the courts of appeals' interpretations of the MVRA in other contexts. As explained above, the legislative history makes clear that Congress intended that § 3663 continue as a permissive provision, but that all restitution orders (whether ordered under § 3663 or § 3663A) be issued and enforced in a uniform manner. This interpretation also is consonant with the many case-law interpretations of § 3664, which read this section to guarantee full restitution to all victims.

### 3. Application to Mr. Day

The application of § 3663 and § 3664 to Mr. Day is made somewhat difficult because both parties have failed to address the interaction between § 3663[7] and § 3664 or to consider critically the continued applicability of pre-MVRA case law to the present action. Nevertheless, we review briefly the arguments of both sides and address those arguments that still survive under the present statutory scheme as we have just outlined it.

Much of Mr. Day's argument is focused on the alleged failure of the district court to consider his lack of financial resources in ordering him to pay such a large sum in restitution. Mr. Day relies on the standards set forth in our pre-MVRA case law interpreting § 3663 and § 3664, *see, e.g.*, *United States v. Studley*, 892 F.2d 518, 532 (7th Cir. 1989), in support of his claim that the district court abused its discretion. For its part, the Government argues that, based on those same standards, the district court's award should be upheld against Mr. Day's challenge.

These submissions are not directed to the issues we must address. As we have discussed above, the MVRA removed any discretion that the district court had under prior law to fix the amount of the restitution award based upon the defendant's economic circumstances. Once the district court exercises its discretion to order restitution under § 3663, it must award restitution in the "full amount" of the victim's

---

[7] As noted above, Mr. Day pleaded guilty to a violation of 49 U.S.C. §§ 32705(a)(2) and 32709(b). This crime falls outside the mandatory coverage of § 3663A. *See supra* note 5. It also is not encompassed by § 3663(a)(1), but falls within the coverage of § 3663(a)(3) (allowing a district court to order restitution according to a plea agreement).

losses. In any event, Mr. Day does not maintain that the district court abused its discretion in ordering restitution. Indeed, such a position would be a difficult one for him to sustain in light of the fact that he agreed to pay full restitution as part of his plea agreement. Furthermore, at this juncture, Mr. Day does not contest that $ 39,875 is an accurate assessment of the victims' losses.[8] Consequently, under the reading of § 3663 and § 3664 outlined above, we cannot say that the district court abused its discretion in ordering Mr. Day to pay restitution in the amount of $ 39,875.

Mr. Day nevertheless contends that the amount of his restitution is inconsistent with this court's prior statements regarding the rehabilitative purpose of restitution. Specifically, Mr. Day points to pre-MVRA case law that emphasizes that the defendant's ability to make restitution is crucial to fulfilling the rehabilitative aspects of restitution. In interpreting the earlier statutory scheme, we had explained that "at the time the court orders restitution it is most paramount that the defendant, in the all-important rehabilitative process, have at least a hope of fulfilling and complying with each and every order of the court." *United States v. Mahoney*, 859 F.2d 47, 52 (7th Cir. 1988). Under pre-MVRA case law, a restitution order that seemed impossible to satisfy—that was, in essence, "a sham"—was

---

[8]  Mr. Day also makes no argument that restitution should have been limited to the loss incurred by the victim of Count 5 of the indictment—the crime to which Mr. Day pleaded guilty. Again, Mr. Day would encounter some difficulty in making a convincing attack on his restitution award on this basis because Mr. Day's plea agreement explicitly provides that he will pay for "all losses covered by the same course of conduct or common scheme or plan as the offense of conviction." R.10 at 2.

grounds for reversal. *See id.*; *United States v. Jaroszenko*, 92 F.3d 486, 492 (7th Cir. 1996).

However, in enacting the MVRA, Congress rejected two principles underlying those cases: that the rehabilitative aspects of restitution should take precedence over other considerations and that the rehabilitative aspects of restitution necessarily were linked to the defendant's ability to pay the restitution award. In discussing the amendments to § 3664, the legislative history evidences a new focus:

> The committee recognizes that a significant number of defendants required to pay restitution under this act will be indigent at the time of sentencing. Moreover, many of these defendants may also be sentenced to prison terms as well, making it unlikely that they will be able to make significant payments on a restitution payment schedule. At the same time, these factors do not obviate the victim's right to restitution or the need that defendants be ordered to pay restitution.
>
> For these reasons, the committee has included in its amendment provisions permitting the court to order full restitution under a schedule of nominal payments in those instances where the defendant cannot pay restitution. The committee recognizes that restitution is an integral part of the criminal sentence that must be complied with. For this reason, the defendant is also required to report material changes in his or her economic circumstances that might affect the ability to pay restitution, and the court is authorized to amend the payment requirements accordingly.

S. Rep. 104-179, at 21. Thus, Congress, in adopting the MVRA, believed that the law should be concerned first with the victim's right to full restitution and the defendant's concomitant recognition of the duty to pay full restitution,

albeit a largely symbolic one. This belief is given effect through § 3664(f), which first requires the court to order "restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).[9] Therefore, the fact that a defendant may never be able to satisfy a restitution award is no longer grounds for reversing that award.

## C.  Schedule of Restitution Payments

Mr. Day also maintains that the district court abused its discretion when it made his ordered restitution due and payable immediately. Specifically, Mr. Day claims that the district court failed to take into account his financial situation in ordering the manner of payments as required by § 3664(f)(2). *See* Reply Br. at 14.

Although § 3664(f) requires payment of restitution in "full" "without consideration" of the defendant's financial circumstances, the district court is required to consider the financial resources of the defendant with respect to the method and schedule of payments:

> (2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in

---

[9] Section 3664(f)(3)(B) does allow the court to "direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." 18 U.S.C. § 3664(f)(3)(B).

which, and the schedule according to which, the restitution is to be paid, in consideration of—

> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and
>
> (C) any financial obligations of the defendant; including any obligations to dependents.

18 U.S.C. § 3664(f)(2).

Mr. Day maintains that the record is devoid of any evidence that he will be able to pay the ordered restitution at any point, much less that he is able to pay the entire $ 39,875 immediately. Consequently, he maintains, the district court could not have considered his financial resources with respect to the schedule of restitution payments as required by § 3664(f)(2).

Whether Mr. Day's argument is meritorious is dependent, in large part, on the meaning of "due and payable immediately." Our case law establishes that this phrase ought not to be read literally. We have stated:

> Our cases have held that "immediate payment" does not mean "immediate payment in full;" rather it means "payment to the extent that the defendant can make it in good faith, beginning immediately." As we have previously noted, "if the defendant is not paying what he can the probation officer will ask the judge to revoke or alter the terms of release. Then the judge may make the order more specific [by prescribing a payment schedule] or, if the defendant has not paid what he could in good faith, may send him back to prison." We

see nothing in the district court's order that would have violated this procedure.

*Jaroszenko*, 92 F.3d at 492 (quoting *United States v. Ahmad*, 2 F.3d 245, 249 (7th Cir. 1993)).

Mr. Day acknowledges our holding in *Jaroszenko*, but urges us to revisit *Jaroszenko*'s interpretation of "immediate payment" in light of the MVRA's amendments to § 3664. He maintains that ordering "payment to the extent that the defendant can make it in good faith, beginning immediately" delegates too much authority to the Probation Office—authority that explicitly is conferred by the statute to the sentencing court.

In making this argument, Mr. Day fails to mention our decision in *United States v. McIntosh*, 198 F.3d 995 (7th Cir. 2000), which, at first glance, appears to dispose of Mr. Day's argument. In *McIntosh*, the district court had waived a fine; it nevertheless ordered that $38,764.50 in restitution be paid immediately. The defendant argued that the district court should not have made the payment due immediately given its decision to waive a fine (thus acknowledging his apparent lack of resources). We found "no merit" in this challenge. *Id.* at 1004. We explained:

> " '[I]mmediate payment' does not mean 'immediate payment in full;' rather it means 'payment to the extent that the defendant can make it in good faith, beginning immediately.' " *United States v. Jaroszenko*, 92 F.3d 486, 492 (7th Cir. 1996). The district court ordered that the restitution be paid immediately and that McIntosh should "notify the probation officer of any material changes and economic circumstances [that] might affect his ability to pay restitution." Thus, the district court has given McIntosh the opportunity to explain his financial circumstances to the probation officer if prob-

> lems arise. The probation officer can then ask the district court to amend the order of restitution accordingly or make the order more specific. We have approved similar approaches in the past, *see id.*; *see also United States v. Ahmad*, 2 F.3d 245, 249 (7th Cir. 1993), and McIntosh presents us with no reason that we should consider it error now.

*Id.* Thus, in at least one case applying the MVRA, we have approved the continued use of our pre-MVRA interpretation of "immediate" payment.

However, a closer look at the facts of *McIntosh* convinces us that it does not purport to lay down a general approach to restitution under the MVRA and thus ignore the significant changes that Congress clearly implemented through that statute. In *McIntosh*, the defendant had engaged in a series of fraudulent transactions which had provided him with a large amount of cash at his disposal. When he was apprehended by federal authorities, the defendant was driving a late model BMW automobile that he had purchased with the proceeds of the fraud and also was in possession of $1,558.54 in cash. On appeal, one of McIntosh's challenges to the restitution order was that "the district court refused to provide him with credit for the property (the BMW and $ 1558.54 in cash) that the U.S. Marshals seized when they arrested him." *Id.* at 1003. The Government objected to the claimed credit "by pointing out that McIntosh had not signed over the property nor had it been forfeited." *Id.* The district court's resolution of the issue—a resolution which we later approved—was to state: " '[I]f he does, he'll be entitled to credit for it.' " *Id.* Thus, it appears that the parties and the court anticipated that the seized property (or proceeds therefrom) would be available for the payment of at least a sizeable portion of the ordered restitution. The availability of such funds increases the possibility

of "immediate" payment, or at least "immediate" partial payment, of the restitution.

We believe that our employment of the pre-MVRA inter-pretation of "immediate" payment in *McIntosh* must be read in light of these circumstances. Nothing in the language we employed in *McIntosh* suggests either that the district court does not have the duty to fix the payment schedule and/or that this duty is delegable. However, under the circum-stances in *McIntosh*, the defendant had at his disposal some funds immediately available to be used for restitution; it therefore was both logical, and consistent with the MVRA, to make the defendant pay all of the funds remaining from his fraudulent activities towards restitution and to use the Probation Office to help ensure that the funds were used to pay the restitution. Should the proceeds prove insufficient to satisfy the entire restitution order immediately, the defendant could inform the Probation Office, and "the pro-bation officer c[ould] then ask the district court to amend the order of restitution accordingly or make the order more specific." *Id.* at 1004. In sum, the presence of existing pro-ceeds of the criminal scheme—some funds available to be used towards "immediate" payment—were critical to our approval of the district court's order in *McIntosh*.[10]

We believe that, given the statutory scheme set forth in the MVRA, the most direct, and most efficient, way for a district court to perform its statutory duty is to fix a payment schedule and to set forth that schedule at the time of

---

[10] It also appears that the defendant in *United States v. McIntosh*, 198 F.3d 995 (7th Cir. 2000), never suggested that the MVRA pro-vided a basis for abandoning, or at least narrowing, our interpre-tation of "immediate" payment under pre-MVRA law. *See id.* at 1004 ("We have approved similar approaches in the past . . . and McIntosh presents us with no reason that we should consider it error now.").

sentencing, even if later events might require its amendment. Such an approach is most compatible with the congressional decisions made in the MVRA. *See supra* at 18-20. Furthermore, when § 3664(f)(2), which contemplates nominal payments, is taken into consideration, Congress' enactment of that section of the MVRA manifests a clear congressional intent that the district court be involved in setting a restitution payment schedule initially upon entry of judgment and that the court also be the ultimate decision-maker in alteration of those payments as time goes on. Notably, the statute does not preclude use of the probation officer, or any other officials such as employees of the Bureau of Prisons, to inform the court of the changed circumstances of the defendant and of the need to alter the schedule. This approach is consistent with that of the other courts of appeals. *See, e.g., United States v. McGlothlin*, 249 F.3d 783, 785 (8th Cir. 2001) (holding that the MVRA "require[s] the district court to set a detailed payment schedule at sentencing"); *United States v. Coates*, 178 F.3d 681, 683-85 (3d Cir. 1999) (same).[11]

Returning to Mr. Day's situation, we believe that it is clear that the approach taken in *McIntosh* will not suffice. Here, Mr. Day does not have at his disposal any funds available for immediate payment of the restitution award. Mr. Day relies on Social Security to provide his basic needs, and there is nothing in Mr. Day's personal or family situation that suggests that his financial situation will improve. Indeed, in light of his current incarceration and current state of his health, it is likely that his financial situation will only

---

[11] *Weinberger v. United States*, 268 F.3d 346 (6th Cir. 2001), is not to the contrary. Despite its miscitation to *United States v. Coates*, 178 F.3d 681 (3d Cir. 1999), the case deals with an application of the VWPA, not the MVRA. *See Weinberger*, 268 F.3d at 356, 359-60.

decline. Ordering restitution "due and payable imme-diately" in Mr. Day's case, therefore, not only ignores Mr. Day's financial circumstances, it also assigns respon-sibility to the Probation Office to formulate a payment schedule from Mr. Day's limited resources. We do not believe that such an action is compatible with the language of § 3664 which requires "the court" to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). Accordingly, the district court should revisit this issue and, if the defendant's circumstances are what they appear to be, enter a more precise order accounting for the defendant's limited resources. Specifically, we invite the district court's attention to 18 U.S.C. § 3664(f)(3), which allows the court to order nominal payments towards the restitution amount if warranted by the defendant's inability to pay.[12]

### Conclusion

For the foregoing reasons, we order a limited remand consistent with our holding in *Paladino*, 401 F.3d 471. We also reverse the judgment of the district court with respect to restitution and remand for further proceedings consistent with this opinion. In all other respects, the judgment of the district court is affirmed.

AFFIRMED in part; REVERSED and REMANDED in part

---

[12] We note that a district court's determination that restitution payments are not due and payable immediately in no way affects the liability of the defendant to pay full restitution. The judicial act of requiring full restitution is distinct from setting a payment schedule.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*