In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-1119

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANA ALVEREZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 15-cr-00123 — **Sarah Evans Barker**, *Judge.*

_____

SUBMITTED DECEMBER 2, 2021[*] — DECIDED DECEMBER 23, 2021

_____

Before FLAUM, EASTERBROOK, and KIRSCH, *Circuit Judges.*

FLAUM, *Circuit Judge.* In 2019, a jury convicted Ana Alverez
of thirteen counts stemming from her participation in a

_____

[*] We granted the parties' joint motion to waive oral argument for this
case, agreeing that this appeal could be resolved on the briefs and record
and that oral argument would not significantly aid the decisional process.
Fed. R. App. P. 34(f).

scheme involving the creation of hundreds of fake credit cards. Alverez appeals the second restitution order entered in this case. We vacated the first when the government agreed with Alverez that certain discrepancies required the district court to revise it. Now, the government again agrees that the restitution order must be vacated and remanded, although it does not agree that we need to decide all the issues Alverez raises.

Accordingly, the second restitution order is vacated and remanded for the reasons on which the parties agree: because the restitution order did not address Alverez's argument for joint and several liability, nor her apparent indigency. We do not reach Alverez's arguments concerning whether a second sentencing hearing was required by 18 U.S.C. § 3553(c) or the Constitution; on remand, however, the district court in its discretion may now elect to hold a hearing before entering a revised restitution order.

## I.  Background

### A. Alverez's Conviction, First Restitution Order, and First Appeal

In 2015, Alverez—with two other participants, Victor Verejano-Contreras and Guillermo Bacallao-Fernandez—created 647 fake credit cards and made $52,631.15 in fraudulent purchases. Verejano-Contreras absconded and is currently a fugitive. Bacallao-Fernandez pleaded guilty in 2018 to one count of misprision of a felony. He was sentenced to 12 months' probation and ordered to pay $1,000 in restitution; the restitution was imposed on a joint and several basis with his co-defendants. Alverez pleaded not guilty and went to trial in March 2019. The jury convicted her on all counts: three

counts of access device fraud, *see* 18 U.S.C. § 1029(a), and ten counts of aggravated identity theft, *see* 18 U.S.C. § 1028A.

The district court held a sentencing hearing on August 19, 2019. Alverez was sentenced to 60 months' incarceration, a slightly-below-guideline sentence. Most pertinent to this appeal, the court also ordered Alverez to pay over $50,000 in restitution. However, inconsistencies in various sentencing records regarding the amount of restitution, as well as the number of victim payees, created confusion regarding that order. On the one hand, at the sentencing hearing, the district court orally imposed $52,562.15 in restitution payable to three victim financial institutions according to the "proportions … laid out in the presentence report [("PSR")]," but the PSR left the proportions "TBD." The written judgment, on the other hand, ordered restitution of $52,561.15[1] to five financial institutions, and described (for the first time) how the total loss amount should be divided. The judgment further specified that Alverez was jointly and severally liable for the restitution with her co-defendant, Bacallao-Fernandez. It also set forth a payment plan, providing that "[a]ny unpaid restitution balance during the term of supervision shall be paid at a rate of not less than 10% of the defendant's gross monthly income."

Alverez appealed, arguing that the restitution order was unlawful for several reasons, most significantly due to the discrepancies among the PSR, oral sentencing, and entered judgment.

---

[1] This total amount conforms to the number listed in the PSR, which was one dollar less than the amount recited by the court at sentencing. The one-dollar discrepancy between the two amounts appears to be an inadvertent misstatement, with $52,561.15 being the correct number.

Instead of responding to Alverez's brief, the government filed a motion to remand. It agreed that we should vacate the judgment and remand to allow the district court to correct the restitution order. The government also conceded that "further restitution proceedings" would "relat[e] only [to] the three victim banks named by the district court" during the sentencing hearing.

We granted the government's motion, vacated the judgment, and remanded for "further proceedings … that are consistent with the government's representations in its motions papers."

## B. Proceedings on Remand and the Second Restitution Order

On remand, the district court solicited the government's "proposal for remediating the deficiencies in [the] previous restitution order identified by the Court of Appeal[s] as well as the government in its appellate filings." The court also instructed the parties to "indicate in their filings whether an amended restitution order can be entered by stipulation or whether a hearing is required to resolve any specific issues."

The government sought an order requiring Alverez to pay $16,652.90 in restitution. Although the government maintained that trial evidence established actual losses of at least $52,631.15 to five banks, "[i]n light of the Seventh Circuit's order," the government did not request restitution to be paid to the two institutions not mentioned during the sentencing hearing. "In calculating the amount of restitution due," the government also "credited [Alverez] for the $34,141.23 … that was forfeited to the Carmel Police Department [after her arrest in 2015], and for the $1,000 in restitution that the [district

court] ordered [her co-defendant] Guillermo Bacallao-Fernandez to pay …." All told, the restitution requested on remand, $16,652.90, was $35,978.25 less than the $52,631.15 amount requested at the original sentencing.

In response, Alverez maintained that any restitution order would be improper,[2] but "[w]ithout waiving [that] argument," she agreed that the credits the government applied to the restitution amount were correct.

Germane to the instant appeal, Alverez further argued that "the restitution obligation should be joint and several for all three defendants or, in the alternative, the Court should apportion the restitution among all three defendants after a hearing at which a determination of their relative culpability and of each defendant['s] ability to pay can be litigated" pursuant to 18 U.S.C. § 3644(h). Additionally, Alverez observed that she was found indigent when she was indicted, and appointed counsel has represented her throughout these criminal proceedings. She requested "a hearing … to determine how and when payments should be made" and her "ability to pay as required by 18 U.S.C. § 3664(f)(3)(B)." Alverez asserted that she would use the requested hearing to establish that "based on her economic circumstances, current[] and projected, and her medical disabilities, she should be ordered to pay only a nominal, periodic amount [toward any restitution entered] as provided by 18 U.S.C. § 3664(f)(3)(B)."

In reply, the government contended that apportionment of restitution was not appropriate, and Alverez's indigency should not "reduce any restitution order to a 'nominal,

---

[2] Alverez does not raise these supposed errors on appeal now, so they are not relevant to this decision.

periodic amount.'" The government addressed Alverez's culpability relative to her co-defendants, but not her ability to pay.

The district court did not hold a hearing as Alverez requested; instead, four days after the government filed its reply brief, the court entered its amended restitution order. In doing so, the district court made three findings:

> [First,] that all evidence relied on by the Government in support of its request for an amended restitution order was previously presented at trial and therefore does not run afoul of *United States v. Noble*, 367 F.3d 681 (7th Cir. 2004) and *United States v. Wyss*, 147 F.3d 631 (7th Cir. 2004), which generally preclude the Government from introducing new evidence at a second sentencing hearing;
>
> [Second,] that the Defendant is liable for payment of the full amount of restitution and is not entitled to a reduction based on indigency; and
>
> [Third,] that the portions of the amended restitution order, reflecting the Government's concessions with respect to … reduced restitution, are not opposed by Defendant and therefore accepted by the Court.

The court then ordered Alverez to pay restitution to the original three victims in the amounts requested by the government. The order did not set a payment schedule, and it was silent on joint and several liability.

Alverez now appeals for a second time.

## II.    Discussion

"[F]ederal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute." *United States v. Donaby*, 349 F.3d 1046, 1052 (7th Cir. 2003) (citation omitted). When it enacted the Mandatory Victim's Restitution Act ("MVRA"), "Congress explicitly required that 'the court shall order' restitution to the victims of certain specified offenses." *Id.* (quoting 18 U.S.C. § 3663A(a)(1)). Alverez's convictions are such offenses. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii) (including offenses against property involving fraud or deceit in the MVRA's mandate). The MVRA sets forth the "[p]rocedure for issuance and enforcement of order[s] of restitution." *See* 18 U.S.C. § 3664.

"We review de novo questions of law regarding the federal courts' authority to order restitution," and "we review for abuse of discretion a district court's calculation of restitution, taking the evidence in the light most favorable to the [g]overnment." *United States v. Webber*, 536 F.3d 584, 601 (7th Cir. 2008) (citations omitted). We review "questions related to the interpretation of [18 U.S.C. § 3664 and Federal Rule of Criminal Procedure 32(c)(1)(B)] and whether the district court followed the prescribed procedures, which are questions of law, de novo." *United States v. Wyatt*, 9 F.4th 440, 450 (7th Cir. 2021).

Alverez argues that the district court erred in three ways: first, when it changed course from the first restitution order and made Alverez solely responsible for restitution, instead of jointly and severally liable with her co-defendants; second, when it did not set a schedule for Alverez's restitution

payments per 18 U.S.C. § 3664(f)(2); and third, when it did not hold another sentencing hearing on restitution, which Alverez argues was required by the Due Process Clause or 18 U.S.C. § 3553(c). The government agrees that a remand is appropriate with respect to the first and second issues, but it disagrees on the third. We turn first to the issue of joint and several liability.

### A.  Joint and Several Liability

Both parties agree that the district court erred when it did not specify whether Alverez was liable for the restitution amount on a joint and several basis with her co-defendants (thereby making Alverez solely liable by default).

The MVRA authorizes the imposition of joint and several liability "on all defendants for loss caused by others participating in the scheme." *United States v. Dokich*, 614 F.3d 314, 318 (7th Cir. 2010) (citing 18 U.S.C. § 3663A(a)(2); *United States v. Martin*, 195 F.3d 961, 968–69 (7th Cir. 1999)); 18 U.S.C. § 3664(h). Although Alverez raised the issue of joint and several liability during her briefing below, the second restitution order did not address it. This was a departure from the first restitution order, which specifically stated that Alverez would be liable for her restitution obligation jointly and severally with Bacallao-Fernandez.

Where a defendant has raised a "specific, rational objection[]" at sentencing, the district court must respond "so that the defendant and a reviewing court can understand its reasons." *United States v. Moose*, 893 F.3d 951, 961 (7th Cir. 2018). Furthermore, when a case is remanded for additional sentencing proceedings and the sentence changes, a district court must explain "why consideration of the same factors

warranted [a less favorable sentence] on resentencing," and a "more significant justification is necessary for more substantial departures." *See United States v. Ballard*, 950 F.3d 434, 436–37 (7th Cir. 2020) (holding that the district court failed to justify a greater upward departure from the Guidelines on remand than the upward departure that originally had been imposed).

Accordingly, the district court procedurally erred when it did not address Alverez's argument for joint and several liability and explain why sole liability—a more onerous sentence—was appropriate after remand. *See id.* at 437 ("We conclude that the district court committed procedural error by not providing an adequate explanation for the major upward departure from the Guidelines range on resentencing.").

### B.  Alverez's Remaining Arguments

Alverez also argues that her indigency required the district court to set a payment schedule. *See* 18 U.S.C. § 3664(f)(2); *United States v. Day*, 418 F.3d 746, 761 (7th Cir. 2005) (holding that district courts have a non-delegable duty to fix a payment schedule for restitution when the defendant does not have the resources to make immediate payment); *United States v. Sawyer*, 521 F.3d 792, 796 (7th Cir. 2008) (holding that where the defendant lacks "the ability to pay immediately," § 3664(f)(2) "require[s] … judges to set schedules for repayment from future earnings and other income once they leave prison," although the error does not "affect substantial rights" for purposes of plain error review under Federal Rule of Criminal Procedure 52(b)). The government agrees that Alverez is

indigent,[3] and it does not challenge the necessity of a payment schedule in this case. On remand, therefore, the district court should address Alverez's arguments concerning her ability (or lack thereof) to immediately pay the restitution amount. *See Moose*, 893 F.3d at 960 (holding that a sentencing judge "must offer some explanation for appellate review").

In addition to the points on which the government agrees, Alverez argues that the Due Process Clause, as well as 18 U.S.C. § 3553(c), required the district court to hold a hearing prior to entering the second restitution order. Because we vacate the second restitution order for the reasons discussed, we need not opine on what procedures were necessary prior to its entry. However, as noted above, the district court is not precluded from exercising its discretion to hold another sentencing hearing on remand. *See United States v. Harris*, 813 F. App'x 710, 713–14 (2d Cir. 2020) ("[I]n the context of contested issues regarding the propriety of a restitution award ... the sentencing procedures employed to resolve such disputes are within the district court's discretion so long as the defendant is given an adequate opportunity to present his position." (alterations in original) (citation omitted)); *United States v. Robl*, 8 F.4th 515, 528–29 (7th Cir. 2021).

---

[3] Alverez's indigency is confirmed by the PSR, which noted that she received just $750 per month in disability income and had no assets before her incarceration. The PSR also concluded that "it does not appear the defendant has the ability to pay a fine within the guideline range," which was $7,500 to $75,000. Additionally, her inability to pay was implicitly acknowledged by the district court when it entered the first restitution order, which provided that Alverez should pay restitution during her supervised release "at a rate of not less than 10% of [her] gross monthly income."

### III.    Conclusion

For the foregoing reasons, we VACATE the second restitution order of the district court and REMAND for further proceedings consistent with this opinion.