In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-4106

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRANKO BOGDANOV,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 CR 110-1 — **Andrea R. Wood**, *Judge.*

ARGUED APRIL 11, 2017 — DECIDED JULY 12, 2017

Before WOOD, *Chief Judge*, and FLAUM and EASTERBROOK,
*Circuit Judges*.

WOOD, *Chief Judge*. Branko Bogdanov pleaded guilty to
two criminal counts stemming from his family's multi-million
dollar shoplifting scheme: one count for conspiring to
transport stolen goods in interstate commerce, 18 U.S.C.
§ 2314, and one count for a substantive violation of the same
law. The district court sentenced him to 48 months' imprison-
ment and entered a preliminary order of forfeiture in the

amount of $2.8 million. Bogdanov now challenges both the sufficiency of the evidence supporting the forfeiture order and the total loss amount that supported his advisory sentencing guidelines range. Because we find no error in either calculation, we affirm the district court.

## I

Bogdanov—along with his wife, Lela, and their adult daughter, Julia—ran a multi-state shoplifting operation for a decade. On their travels to shopping malls and retail stores, the trio stole consumer retail goods such as American Girl dolls, Lego blocks, and bags of Starbucks coffee. They then sold the stolen goods, either online through eBay accounts belonging to family members, or to another person (who later became a confidential informant known as "Individual A"), who in turn sold them through his own eBay account.

One of the victim stores was Barnes & Noble. In response to reports of large quantities of missing retail items, a Barnes & Noble corporate investigator opened an investigation in the fall of 2013. The investigator's online queries led him to Julia Bogdanov's and Individual A's eBay accounts, which provided sales information and home addresses. With this in hand, the investigator eventually approached Individual A in person to question him about the goods. In later voluntary interviews with the investigator, Individual A revealed that Bogdanov (to whom he referred as "Franko Kalath") was the source of approximately 90-95% of the items that Individual A sold through his eBay account. Individual A claimed that Bogdanov had told him that he had a supplier for the goods in California.

The corporate investigator eventually referred the matter to the U.S. Secret Service; the referral led federal and local law enforcement officers to begin investigating and tracking the Bogdanovs. Police officers surveilled the Bogdanovs on their travels to stores in Texas, Louisiana, and Mississippi, and they conducted pretextual traffic stops accompanied by searches that revealed vans full of consumer goods for which the Bogdanovs had no receipts. Store surveillance cameras also showed the Bogdanovs stealing goods at various locations.

The government filed a criminal complaint against the three Bogdanovs in March 2014. After arresting them, law enforcement officers executed a search warrant for the family's home in Northbrook, Illinois, where all three resided. During the search, officers seized consumer goods such as Legos, baby monitors, headphones, and bags of Starbucks coffee. A grand jury indicted the Bogdanovs in April 2014; the indictment charged Branko Bogdanov with conspiracy to violate section 2314, and with one substantive violation of section 2314. (In the remainder of this opinion, we refer to him as "Bogdanov" and to Lela and Julia by their first names.) Bogdanov pleaded guilty in November 2015 pursuant to a plea agreement, in which he acknowledged that he and his co-conspirators stole goods with a value in excess of $5,000 and that the conspiracy lasted more than ten years. Bogdanov also acknowledged that the family's home was subject to forfeiture because the property was derived from proceeds traceable to the offenses, and he agreed to the entry of a forfeiture judgment against the home.

The plea agreement noted that Bogdanov and the government did not agree on the estimated loss amount: the govern-

ment calculated it to be more than $3.5 million, while Bog-danov asserted that it was a comparatively modest $15,000 to $40,000. To resolve the dispute, the district court held an evi-dentiary hearing at which the Barnes & Noble investigator and the Secret Service agent assigned to the case testified. Both described their interviews with Individual A. The inves-tigator also laid out for the court the method he had used to calculate the loss: 1) he added up the dollar amounts of Indi-vidual A's items sold between 2007 and 2014 on eBay; 2) he reduced that total by 10% because Individual A estimated that 5 to 10% of the items he sold did not come from Bogdanov; 3) he added in the items sold on the Bogdanov family eBay ac-counts; and 4) he increased the adjusted total by 25% to ac-count for the fact that the items had been sold online for prices below their retail value. This method yielded a total loss amount of just over $3.5 million, which resulted in an 18-level increase to the base offense level under the sentencing guide-lines. U.S.S.G. § 2B1.1(b)(1)(J).

Bogdanov did not testify at the hearing or present any witnesses on his behalf. Instead, he argued in his sentencing memorandum that the government had failed to establish that the goods sold on Individual A's eBay account were sto-len or (if they were) that Bogdanov was the person who stole them. As for the goods sold through his individual family member's accounts, Bogdanov similarly argued that the gov-ernment's evidence fell short of linking Bogdanov to the al-leged thefts.

The district court rejected Bogdanov's arguments. It ruled that the government was not required to trace each and every item to the source, that the government reasonably supported

its estimate, and that sufficient circumstantial evidence supported the overall total. The government then requested, and the district court granted, a preliminary order of forfeiture in the amount of $2.8 million (for which the house was identified as a substitute asset in partial satisfaction of the money judgment). The difference between the forfeiture and loss amounts represented a 25% deduction from the $3.5 million loss amount calculation to account for "proceeds" made from the crime, rather than loss to the victims. Bogdanov opposed the forfeiture amount on the same grounds he had advanced against the loss amount.

Bogdanov challenges the restitution and loss amounts on appeal, arguing principally that the government presented insufficient evidence to support the finding that he stole the goods.

**II**

Loss amounts and forfeiture amounts are not necessarily the same. The loss amount for purposes of sentencing is based on both the conduct of conviction and relevant criminal or unlawful conduct; it must be attributable to the defendant. *United States v. Orillo*, 733 F.3d 241, 244 (7th Cir. 2013). Forfeiture, in contrast, is gain-based, focusing on the defendant's proceeds from the criminal activity. 18 U.S.C. § 981(a)(1); *United States v. Segal*, 495 F.3d 826, 839 (7th Cir. 2007). We use the same clear error standard in our assessment of both the loss and forfeiture amounts; we will reverse only if our review leaves us with the definite and firm conviction that the district court made a mistake. *Orillo*, 733 F.3d at 244; *United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010).

We do not need to dwell on the difference between loss and forfeiture in this case, because Bogdanov is not complaining about the details of either calculation. Rather, he challenges the sufficiency of the evidence in a way that applies equally to both amounts. We therefore address them together. See *Ali*, 619 F.3d at 720 (analyzing challenges to loss calculation, forfeiture order, and restitution award together because challenges to each were the same); see also *Orillo*, 733 F.3d at 244 (analyzing challenges to loss and restitution amounts together).

For purposes of calculating loss for sentencing and orders of forfeiture, the government must prove the amount by a preponderance of the evidence. *Ali*, 619 F.3d at 720. In other words, the court (which serves as the finder of fact for both calculations) must conclude that it is more likely than not that the amount in question is correct; for this purpose, a reasonable estimate suffices. *Orillo*, 733 F.3d at 244.

Bogdanov first takes aim at the district court's reliance on Individual A's hearsay testimony. He points out, accurately enough, that had there been a trial, the fact-finder would have had to rely exclusively on Individual A's statements about the source of the stolen goods, and those statements (in the form the government used them) were hearsay. But so what? Bogdanov *admitted* that he committed the underlying offense. With guilt established, all that remained was to prove the loss amounts for sentencing and restitution by a preponderance, under the more relaxed evidentiary rules that apply at the sentencing stage. As the district court properly observed, the government did not need to trace back each good or dollar to the crime. Rather, it had to prove only that it was more likely

than not that Bogdanov stole and resold a particular amount's worth of goods to Individual A.

Moreover, it is inaccurate to say that the district court was relying solely on Individual A's statements. Recall: Bogdanov signed a plea agreement in which he admitted to conspiring over a ten-year period with his wife and daughter to transport stolen goods, to selling goods on eBay that they had stolen from retail stores, and to selling goods to Individual A, which Individual A sold via eBay. Although the plea agreement did not specify that the goods Bogdanov sold to Individual A were stolen, abundant circumstantial evidence supports the finding that it was more likely than not that Bogdanov stole the goods in question. Indeed, his own admissions strongly imply that the goods he sold to Individual A were stolen. The government demonstrated through direct evidence and Bogdanov's own admissions that Bogdanov was in the business of stealing and reselling the same types of consumer retail goods that he sold to Individual A.

In response, Bogdanov marshaled no evidence showing that any of the alleged goods in question were obtained legitimately: he produced neither receipts nor any other evidence of a legal source for the goods. Despite Bogdanov's contention otherwise, the fact that Individual A reported that Bogdanov had told him that the goods were not stolen is not evidence that Bogdanov had a legitimate source for the goods; at most, it is evidence that Bogdanov may have *told* Individual A he had a *bona fide* supplier. The district court was therefore well within its discretion to disregard that statement when assessing the evidence. While Bogdanov argues that the district court ignored evidence of his legitimate sources of income such as his family's vehicle sales and construction businesses,

the fact that his family may have had access to some untainted sources of income says nothing about the source of the stolen goods themselves.

Bogdanov also challenges the credibility of Individual A's testimony because the latter was an identified criminal and, Bogdanov says, he did not have the opportunity to cross-examine Individual A. (Bogdanov does not go into any detail about the reason for Individual A's unavailability, and so neither will we.) The district court acted within its discretion in relying on Individual A's testimony, as the court found that it was reliable. See *United States v. Miller*, 782 F.3d 793, 801 (7th Cir. 2015) (noting that the rules of evidence do not apply to sentencing hearings and use of hearsay testimony is not reversible error). In support of that finding, the court noted that the statements Individual A made in writing, on video, and to government and corporate investigators were consistent. The district judge was able to view Individual A's video testimony and observe his demeanor. Although the court had the option of discounting Individual A's testimony as that of an "identified criminal," it was under no obligation to do so. The touchstone is reliability, *United States v. Sewell*, 780 F.3d 839, 849–50 (7th Cir. 2015), and we see no clear error in the district court's decision that this crucial testimony passed the test.

Finally, Bogdanov thinks it is problematic that a corporate loss investigator, rather than a government officer, performed the initial calculations of the loss amounts. According to Bogdanov, government officials ordinarily "seek a just disposition," whereas victims "customarily seek vengeance and maximum punishment … ." This, he wants us to believe, means that he was prejudiced by the corporate investigator's calcu-

lation of the losses. But the fact that a mathematical calculation is performed by a victim is not enough to establish prejudice. To convince us there was an error, Bogdanov would have had to show that the formulas applied or the calculations performed were improper or erroneous—that is, he needed to show that the investigator failed to apply a reasonable methodology to calculate the loss. He did not do so, and so his argument fails.

For the sake of completeness, we note in closing that although it was not clear how profits from the enterprise may have been split among Bogdanov, his family members, and Individual A, Bogdanov has not raised any challenge to the order of forfeiture on the basis established in the Supreme Court's recent decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). In *Honeycutt*, the Court held that for purposes of the drug forfeiture statute, 21 U.S.C. § 853, a defendant cannot be held jointly and severally liable for property that a co-conspirator derived from a crime, if the defendant himself did not acquire it. Bogdanov's forfeiture of this argument means that we must save for another day the possible application of this principle to an arrangement such as this one. See *Ali*, 619 F.3d 713.

The judgment of the district court is AFFIRMED.