In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-2382

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAMEION WYATT,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-CR-85-JPS-1 — **J.P. Stadtmueller**, *Judge.*

———————————

ARGUED MAY 13, 2021 — DECIDED AUGUST 12, 2021

———————————

Before SYKES, *Chief Judge*, and SCUDDER and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Dameion Wyatt victimized six females, each of whom acted as prostitutes under Wyatt's abusive supervision over varying periods from September 2011 through May 2014. He pleaded guilty to one count of interstate sex trafficking and was sentenced to ten years' imprisonment. Wyatt's conviction triggered certain mandatory restitution statutes, and the district court took the restitution

issue under advisement at sentencing. Following negotiations between the parties, written objections, oral argument, and supplemental briefing, the district court entered a carefully reasoned order requiring Wyatt to pay restitution to three victims of his trafficking: $12,750 to Adult Victim 1 ("AV-1"), $45,200 to Adult Victim 3 ("AV-3"), and $37,125 to Adult Victim 5 ("AV-5"), totaling $95,075.

Wyatt now appeals the restitution order, arguing that the district court improperly delayed the restitution determination, did not rely on a statutorily required "complete accounting" of the victims' losses (and otherwise erred by relying on improper evidence and, as a result, ordered too much restitution), deprived him of counsel during the restitution process, and improperly ordered restitution outside of his presence.[1] We find no reversible error in the restitution proceedings or in the district court's calculation of the proper amount of restitution, and thus affirm.

I

Wyatt raises four primary challenges to the district court's restitution process and ultimate restitution award. Resolving these challenges involves addressing the muddled, winding procedural and substantive road that has led here. Because the relevance of certain facts is bound up closely with the applicable restitution statutes, we include, in our discussion of

---

[1] Wyatt appealed his term of imprisonment while restitution was still pending in the district court, and we affirmed in *United States v. Wyatt*, 982 F.3d 1028 (7th Cir. 2020). See *United States v. Collins*, 949 F.3d 1049, 1055 (7th Cir. 2020) (discussing the process of appealing while the district court's restitution decision is deferred).

those facts, some of the relevant statutory provisions, which are dealt with in greater depth later in this opinion.

On July 2, 2019, Wyatt pleaded guilty to one count of interstate sex trafficking in violation of 18 U.S.C. § 1594(c). Under 18 U.S.C. § 1593, Wyatt was subject to mandatory restitution to the victims for the full amount of their losses. On September 17, 2019, the government provided the probation officer a recommendation for restitution on behalf of three of the victims, which included Wyatt's initial objections to those recommendations. The government submitted a revised request on September 26, 2019, and Wyatt submitted additional objections on September 30, 2019. The probation officer submitted these figures and objections to the district court in a Presentence Investigation Report Addendum (the "Addendum") filed October 3, 2019. On that same day, probation also filed a Revised Presentence Investigation Report (the "PSR").

The Addendum stated the government initially recommended $202,000 in restitution for the three victims ($36,000 for AV-1, $91,000 for AV-3, and $75,000 for AV-5). The Addendum also reflected that on September 30, 2019, the government revised its numbers to $11,000 for AV-1, $71,600 for AV-3, and $89,700 for AV-5, for a total of $172,300. This reduction was the result of negotiations between the government and Wyatt's counsel, though some factual disputes remained as to the proper restitution figures, as the parties disputed the dates each victim worked for Wyatt and the estimated number of commercial sexual transactions that each engaged in for Wyatt's financial benefit.

After reciting each side's position in the Addendum, the Probation Officer wrote:

It is the position of the probation officer victims AV-1 and AV-5 would be entitled to restitution under the Mandatory Victims Restitution Act.[2] Given the calculations provided by the government, **it is the recommendation of the probation officer the Court find the victim's losses were not ascertainable by a date ten days prior to sentencing**.[3] Under the provisions of 18 U.S.C. § 3664(d)(5), the Court shall set a date for the final determination of the victims' losses, not to exceed 90 days after sentencing.

Despite these figures and statements in the Addendum, the body of the PSR stated: "Restitution: None."

The sentencing went forward on November 15, 2019. At the beginning of the hearing, the district court asked the parties whether they had any issues with the information contained in the "numbered paragraphs" of the PSR. Wyatt's counsel, Daniel Sanders, stated that he had "no additional information … that we haven't already provided to the Probation Department, the Government, and the Court." The district court then stated:

As for the restitution, since there is no agreement on the restitution, what the Court is going to do today consistent with the requirements of Title 18, Section [3663A] is I'm going to schedule an outside date for further hearing on

---

[2] The omission of AV-3 was likely an oversight by the officer, as the preceding statements in the Addendum deal with all three relevant victims, not just AV-1 and AV-5. Neither party has suggested otherwise on appeal.

[3] Emphasis added.

restitution on Friday, February 7th, of next year at 8:30. I appreciate there are competing interests here, but on the basis of what's in the revised presentence report and the addenda, the Court is unable to make a meaningful determination without guessing, and guesswork has no role in restitution determinations.

And, again, given the significant dollar amounts that are at issue here … the Court has to go through the labyrinth of making a reasoned determination, and we're not there yet.

The district court announced Wyatt's guideline range was 262 to 327 months' imprisonment and noted that restitution was "yet to be determined." The district court then asked:

Having made those determinations, Mr. Sanders, do you and your client have any reason to advance this morning as to why the Court ought not proceed today with the imposition of sentence in this case?

MR. SANDERS [Defense counsel]: No, sir.

Later, after Sanders argued for his requested sentence, the district court briefly returned to the restitution issue:

THE COURT: Obviously at some point if there is a restitution order, there will be provisions that relate to that including a reasonable monthly payment requirement.

MR. SANDERS: We understand that, Your Honor.

> THE COURT: But today is not the day to address that.
>
> MR. SANDERS: We understand that, Your Honor.

Following Wyatt's allocution, the district court reiterated that it would take the restitution issue under advisement and would reconvene on February 7, 2020, stating that if the parties are "unable to agree upon an appropriate restitution amount," it may "refer the matter for further fact finding [before a] magistrate judge for [an] evidentiary hearing if that [is] required." The court referenced § 3664(d)(5) as providing authority to make the "final determination on restitution … within 90 days of today's date," which it intended to do "unless the parties resolve the matter via agreed restitution order in the interim." As discussed, the court ultimately accepted the below-guideline joint recommendation of the parties and sentenced Wyatt to ten years in prison.

Following the sentencing hearing, on December 2, 2019, Wyatt, through Sanders, filed a notice of appeal. This caused some electronic docketing issues. Although Sanders was representing Wyatt and intended to continue representing him in the restitution proceedings still pending before the district court, Wyatt also sought and was appointed appellate counsel in his first appeal. This resulted in Sanders being removed from the district court's electronic filing notification system, as he was not appellate counsel, meaning Sanders did not receive notices of subsequent filings in the district court. The parties agree this issue was not Sanders's fault.

In any event, following Sanders's removal from the notification system, various filings were entered on the district

court's docket before the February 7, 2020 restitution hearing. First, on December 5, 2019, Wyatt filed a pro se motion for an evidentiary hearing related to whether the government had breached the plea agreement. The government responded, and Wyatt eventually also filed a reply brief pro se. Wyatt's first appeal disposed of this substantive issue.

More relevant here, however, is that the government also filed a brief in support of its requested restitution on February 4, 2020. That brief was accompanied by an affidavit submitted by the case agent who had investigated Wyatt, Special Agent Todd Higgins with the Wisconsin Division of Criminal Investigations. A few days before the restitution hearing, Sanders became aware of the docketing issue. Sanders appeared at the hearing and advised the district court of the problem. The district court stated that it would recall the case at 1 p.m. in order to give Sanders time to review the recent filings. The district court added that "unless you have something very significant, the Court is prepared, with or without your representing Mr. Dameion Wyatt, to enter an order of restitution. … This case has dragged on and on and on and on with no end in sight. … [Y]our client agreed in the plea agreement that the victims in this case have protected rights. And the information in the discovery in Mr. Higgins' affidavit mirrors everything that was available to you as Mr. Wyatt's counsel from day one." Sanders disagreed with the district court's last statement and said he would address it at 1 p.m.

The case was recalled that afternoon. Sanders stated that he had reviewed the government's brief and the agent's affidavit. He stated that Wyatt still disputed certain figures and proceeded to argue in detail his objections to the government's submissions. Sanders stated that his objections were

based on discrepancies between the affidavit and the earlier received reports, grand jury testimony, and the discovery produced by the government. In the end, Sanders proposed restitution be set at $49,250: $8,000 for AV-1, $10,200 for AV-3, and $31,050 for AV-5.

When Sanders concluded, the district court stated that the government could respond. Shortly after the prosecutor began talking, the court interjected that the hearing was "unnecessary" but had come about because the government had failed to follow the deadlines set out in the relevant restitution statutes. The district court additionally stated that the government had "bushwhacked" Sanders and the court. The court then continued, "Does that mean these victims are not entitled to restitution? Indeed they are, but we're not going to take valuable court time nickel and diming what Mr. Higgins endeavored to provide to the Court, and I accept his own findings." The district court then stated that "hence forward, if these matters are not thoroughly vetted and addressed in the Presentence Report, it's over. There will be no restitution. It's plain and simple." The district court then stated that it would take Sanders's comments under advisement and that if the government wanted to file a written response it could do so by the following Friday. Both parties indicated that they disputed the district court's characterization of the proceedings, and Sanders stated that he intended to file a written response outlining Wyatt's objections. The hearing then concluded.

On February 13, 2020, Wyatt filed a pro se memorandum stating that he objected to the restitution figures. The next day, February 14, Sanders moved to withdraw from the case. On February 14, the government also filed its supplemental

brief in response to the court's admonition and echoed its earlier restitution arguments.

Following the February 7 hearing, Wyatt filed five other documents, pro se, with the court:

- A memorandum disputing whether AV-3 and AV-5 should be considered victims. This filing also stated that Sanders was working with the government against Wyatt's interests. (Feb. 13, 2020.)

- A request to file a substantive response to the government's restitution request by March 13, 2020. (Feb. 24, 2020.)

- A letter requesting that the district court have patience when it reviews his motion for disclosure of grand jury materials. (Feb. 24, 2020.)

- A motion titled "Motion for Disclosure of Grand Jury Transcripts for Particularized Reasons" stating that he could not adequately challenge the government's affidavit without the grand jury transcripts and requesting the court order that he receive them. He also moved for dismissal of his indictment on the ground that certain witnesses had perjured themselves before the grand jury. (March 6, 2020.)

- A substantive response to the government's restitution request asserting that certain facts the government relied on were untrue (including Facebook message screenshots purporting to show certain days when he was not with certain victims). Wyatt also argued that the prosecutor had violated his due process rights by reading certain victim statements at sentencing and challenged the victims' credibility. (March 6, 2020.)

None of these filings prompted any immediate action from the district court. Roughly four months later, on July 22, 2020, the district court entered a detailed order awarding restitution in the amount of $12,750 to AV-1, $45,200 to AV-3, and $37,125 to AV-5, for a total restitution amount of $95,075. The district court also granted Sanders's motion to withdraw.

In its order, the district court held that its failure to meet the restitution statutes' deadlines in issuing its restitution order did not deprive it of jurisdiction, citing *Dolan v. United States*, 560 U.S. 605 (2010). The district court wrote that it was adopting the facts as laid out in the PSR and the Addendum, except where objections were made or the report lacked sufficient detail, in which case it relied on the written submissions and arguments made before and after the restitution hearing. The district court noted that the government bore the burden of establishing the restitution amount, per 18 U.S.C. § 3664(e). The district court then provided a detailed analysis of the record in reaching its conclusions as to the proper restitution figures, discussed further below.

## II

With this background in mind, we turn to the issues in this appeal. Wyatt raises four primary arguments: (1) the district court erred by postponing the restitution determination pursuant to 18 U.S.C. § 3664(d)(5) because, in Wyatt's view, the amount of restitution was "ascertainable" at the time of sentencing; (2) the district court erred by failing to require the probation officer to provide a "complete accounting" and by relying on untimely, inaccurate, and unreliable information in calculating the amount of restitution; (3) the district court erred by entering the restitution order when Wyatt was essentially unrepresented; and (4) the district court erred by

entering the restitution order outside Wyatt's presence. Each argument will be addressed in turn.

A

1

Wyatt first argues that the amount of restitution was "ascertainable" at the November 15, 2019 sentencing, and therefore the district court erred by following the procedure for delayed restitution orders outlined in 18 U.S.C. § 3664(d)(5).[4] Wyatt then shifts between three arguments to show why the restitution amount was in fact "ascertainable." First, Wyatt argues that because the PSR listed restitution as "None" and because no victim claimed any loss, the figure was ascertainable as being zero and he owed no restitution. Second, Wyatt argues that no restitution should have been ordered because "a victim who renounces the right to restitution---as effectively happened here once the victims knowingly declined restitution (PSR ¶41)---ends the court's ability to award restitution under the MVRA [Mandatory Victims Restitution Act]." Third, Wyatt argues that just because the parties disagreed about the proper amount of restitution does not mean that the district court could not have made the determination of the proper restitution amount at sentencing. He adds that the ultimate restitution decision was based on information that had been available to the government before the sentencing proceedings began—witness statements and grand jury

---

[4] Section 3664(d)(5) states, in relevant part, that "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

transcripts. Because the amount of restitution was ascertaina-ble at the time of sentencing, Wyatt continues, the district court lacked jurisdiction to order restitution through a de-layed procedure and no restitution should have been awarded.

Wyatt did not raise these arguments in the district court. In fact, his attorney repeatedly expressed satisfaction with the district court's handling of the restitution process. Accord-ingly, our review is for plain error. Wyatt must show (1) an error, (2) that the error is plain, (3) that the error affected his substantial rights, and (4) that the error "seriously affects the fairness, integrity, or public reputation of judicial proceed-ings." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016); see *United States v. Morrow*, — F. 4th —, 2021 WL 3121375, at *5 (7th Cir. 2021).

Wyatt fails to meet this burden. To begin, we have diffi-culty squaring the PSR's statement listing restitution as "None" with the in-depth information in the Addendum (filed the same day as the PSR) detailing the government's re-quests for restitution and Wyatt's thorough objections to the government's positions. But this inconsistency does not war-rant a finding of error. The Addendum, which outlined the lingering disputes concerning the proper restitution figure, specifically recommended that the district court find that the restitution figure was not ascertainable. Moreover, the PSR noted the MVRA's application to Wyatt's offense and the gov-ernment's efforts to gather information to determine the proper restitution amount. And Wyatt admitted during sen-tencing that he had reviewed the Addendum and PSR. Given the record on this point, it is implausible to think that Wyatt, his attorney, or anyone in the courtroom understood the

statement "None" to represent a final determination of the amount of restitution owed.

Wyatt's second argument also falls short of identifying a plain error. Wyatt identifies nothing in the record to suggest that his victims knowingly declined restitution. The only statement in the record that we have identified on this issue is from the probation officer, who wrote that as of the time the PSR was written, only AV-1 had provided a response to the officer's request for victim impact statements and the government was continuing its efforts to reach the other victims. We will not draw a negative inference against the victims from their lack of responses.

Wyatt resists this conclusion by citing to *United States v. Speakman*, 594 F.3d 1165, 1176–77 (10th Cir. 2010). But *Speakman* undermines Wyatt's point. *Speakman* states that "the MVRA requires the sentencing court to provide restitution to victims, and this overriding public policy prevents a court from concluding that a victim renounced her interest in restitution without a clear statement that the victim in fact renounces restitution." *Id.* at 1178 (quotation and alteration omitted). There are no clear statements renouncing restitution from Wyatt's victims here. We reject Wyatt's argument that the victims in this case have "knowingly declined restitution."

Turning to Wyatt's third argument, we agree that the witness statements and grand jury transcripts were available before the restitution proceedings. But the ultimate material that was submitted before sentencing was subject to various factual disputes and required analysis and parsing by the district court. We cannot say that the district court plainly erred by making the determination that the amount of restitution was not ascertainable at the time of sentencing, and we think it

improper for Wyatt to benefit from the unobjected to, reasonable procedure that the district court implemented. This is particularly true where Wyatt repeatedly acquiesced in the district court's determination that it would resolve restitution at a later date.

In sum, we disagree with Wyatt's threshold argument that the district court plainly erred in its determination that the amount of restitution was not ascertainable on the record before it.[5]

2

Relatedly, Wyatt asserts that Federal Rule of Criminal Procedure 32(b), which states that a district court "must impose sentence without unnecessary delay," was violated by virtue of the district court's handling of the timing of the restitution determination. This argument is foreclosed by 18 U.S.C. § 3664(c). See *United States v. Stivers*, 996 F.3d 800, 801 (7th Cir. 2021). In *Stivers*, we held that § 3664(c) makes clear that the only Federal Rule of Criminal Procedure that applies to restitution orders is Rule 32(c). *Id.*; see 18 U.S.C. § 3664(c) ("The provisions of this chapter, chapter 227, and Rule 32(c) of the Federal Rules of Criminal Procedure shall be the only rules applicable to proceedings under this section."). Thus, his reliance on Rule 32(b) is misplaced.

---

[5] We therefore need not address Wyatt's argument that an erroneous determination on this point strips the district court of jurisdiction, which itself is a questionable proposition in light of the principles discussed in *Dolan v. United States*, 560 U.S. 605 (2010) and *United States v. Robl*, — F.4th —, 2021 WL 3478644, at *6–7 (7th Cir. 2021).

## B

Second, Wyatt argues that the district court erred by failing to order a "complete accounting" of his victims' losses and by relying on belated, untested, and unreliable evidence in fashioning the restitution award. Because of these failings, Wyatt argues, the district court ordered him to pay more restitution than he owed. We disagree.

## 1

Wyatt predicates the "complete accounting" aspect of his challenge on 18 U.S.C. § 3664(a) and Federal Rule of Criminal Procedure 32(c)(1)(B). We typically review questions related to the interpretation of these authorities and whether the district court followed the prescribed procedures, which are questions of law, de novo. See *United States v. Powell*, 929 F.2d 1190, 1193 (7th Cir. 1991); *United States v. Clark*, 538 F.3d 803, 808 (7th Cir. 2008). As the government points out, however, certain arguments Wyatt makes on these issues were never raised in the district court. Specifically, Wyatt never objected to the district court's reliance on "belated" evidence and never raised an argument before the district court that a "complete accounting" was necessary but had not been performed. Rather, Wyatt raised specific factual objections to the calculations done by the government and its agent, discussed below. Thus, aside from his factual challenges, our review is for plain error. See *United States v. Fennell*, 925 F.3d 358, 361–62 (7th Cir. 2019) ("Because these arguments are different in kind from those raised in the district court, we will overturn the district court's calculation only if we find an error that likely deprived [the defendant] of his substantial rights and had a significant chance of affecting the outcome.").

Restitution determinations must be made in accordance with certain legal requirements. Section 3664(a) provides:

> For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

The Federal Rules of Criminal Procedure contain a similar requirement. Rule 32(c)(1)(B) provides: "If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution."

We note at the outset that these provisions do not unequivocally require a "complete accounting"—rather, such accounting must be provided "to the extent practicable." Similarly, Rule 32(c)(1)(B) requires a report to be provided that contains "sufficient information" to form the basis for a restitution order. Such tempering language is logical, as it may be common for individuals engaged in certain criminal

activities—like interstate sex trafficking—to forgo generally accepted accounting principles or detailed bookkeeping.

We deal first with Wyatt's contentions that the material relied upon was incomplete or flawed. In this case, the district court considered the PSR, the Addendum, the supplemental government filing which included the case agent's declaration, and oral and written restitution arguments from Wyatt and his attorney. Those materials, in turn, relied on the underlying plea agreement and materials from the investigation. The plea agreement noted that its factual basis was based upon "the anticipated testimony of numerous witnesses, victims, and law enforcement agents, and records obtained via grand jury subpoenas." The PSR relied extensively on statements from Wyatt's victims and other evidence, such as Wyatt's social media. It detailed, in depth, Wyatt's treatment of his victims, including that he had repeatedly lashed some of these women with belts, burned cigarettes on them, strip searched them to make sure they were giving him all the money they earned from their "dates," and generally manipulated, threatened, and cut them off from contacting their families. The PSR additionally recounted how the women would get dates, how much their dates generally cost and the frequency of those dates, and the timeframe in which they were involved with Wyatt.

As noted above, Wyatt did not directly challenge the sufficiency of these materials below; this challenge came on appeal after Wyatt was ordered to pay more to his sex trafficking victims than he thinks they deserve. As discussed further below, the district court did not blindly credit the statements the case agent made about the grand jury testimony. Rather, the district court meticulously compared those statements to

other materials in the record and made reasoned determinations where the materials were in conflict or objected to. Thus, we cannot say that the district court erred in its measured approach. Moreover, Wyatt's intimation that he did not have the ability to review and determine the reliability of the underlying materials relied on in the PSR and the case agent's declaration is belied by the record. Wyatt's attorney indicated that he had reviewed the reports and grand jury testimony, which in part formed the basis for his detailed objections to the government's proposed restitution figures. We similarly reject Wyatt's argument that the district court should have required those transcripts be made part of the record in this case, as Sanders had the opportunity to review and object to facts contained therein, which the district court then analyzed. Thus, we find no error with respect to the lack of a complete accounting in this case, as the district court based its determination on sufficient materials to make a reasoned restitution award.

2

With respect to the district court's analysis of the materials in the record and award, the district court issued a 15-page restitution order detailing its reasoning for the ultimate award of $95,075 to three of Wyatt's sex trafficking victims. We review the district court's determination of the restitution amount for abuse of discretion, viewing the evidence in the light most favorable to the government. See *United States v. Friedman*, 971 F.3d 700, 717 (7th Cir. 2020). "We will disturb a restitution order only if the district court relied upon inappropriate factors when it exercised its discretion or failed to use any discretion at all." *United States v. Havens*, 424 F.3d 535, 538 (7th Cir. 2005).

The district court did not abuse its discretion with respect to the amount of restitution. The district court did not simply accept the government's proposed restitution figures. Rather, it analyzed Wyatt's objections, excised requests that the government had not proven by a preponderance of the evidence, and explained its process in so doing. Wyatt fails to identify any inappropriate factor or absence of discretion. Instead, Wyatt effectively asks us to start anew to determine the amount of restitution that is proper. But that is not our role. Many of Wyatt's specific factual challenges to the district court's findings merit no discussion and border on frivolous.[6] Nevertheless, we address two points he raises.

First, Wyatt contends that one victim, AV-5, was not in fact a victim for the first weekend that she worked for him because there was "no fraud, duress or coercion that caused her to prostitute herself." We disagree. The PSR states that, although AV-5 voluntarily spoke with Wyatt about becoming a prostitute and then went on 30-40 dates on the first weekend, she stated that she had done so with the expectation of making

---

[6] For example, Wyatt claims that it is "unfathomable" that the victims in this case never received any of the proceeds from their prostitution, which he claims should offset what he has to pay them now. Yet, in a portion of the PSR (which Wyatt did dispute), the probation officer reported, "Although [Wyatt] initially promised AV-1 that she would keep some of the money from the dates, Mr. Wyatt took all of the money AV-1 earned, typically around $250.00 per date. … After 'dates,' Mr. Wyatt would sometimes 'strip search' AV-1 to confirm she had not concealed any money she earned during a date." AV-3 and AV-5 made similar statements. Given the other acts of extreme physical and sexual violence detailed in the report, which we will not repeat here, it is indeed fathomable, and was appropriate for the district court to conclude, that these victims did not keep proceeds from Wyatt.

money quickly and then returning to her family. But the PSR reports that Wyatt kept that money and then told her he "should not have to ask her" for all the money and valuables she received from a date because she did not want to "wind up like the last girl." This supports the district court's conclusion that AV-5 was a victim for this time period.

Second, Wyatt argues that because credibility was at issue, the district court should have held a hearing and listened to witness testimony before deciding restitution. Wyatt's credibility argument appears to hinge, at least in part, on his disapproval of the district court's reliance on hearsay statements. The Federal Rules of Evidence do not apply in calculating restitution, however, and the "use of hearsay is not reversible error." *United States v. Bogdanov*, 863 F.3d 630, 635 (7th Cir. 2017). The district court, with all the material before it, including Wyatt's guilty plea, was entitled to make the determinations it did about the reliability of the statements and did not abuse its discretion in its handling of this matter.

In the end, we will not disturb the district court's meticulous order awarding $95,075 to Wyatt's victims AV-1, AV-3, and AV-5.

C

Wyatt next argues that the district court erred by determining restitution without affording him counsel. As Wyatt views it, he was unrepresented from the time an attorney-client conflict developed shortly after sentencing until the restitution order was issued. Wyatt argues that following Sanders's motion to withdraw, the district court should have construed Wyatt's February 24, 2020 filing requesting more time to respond to the government's post-restitution hearing

argument as a motion for new counsel or substitution of counsel because Wyatt wrote that he did not "trust Mr. Sanders to do anything for me" and he viewed Sanders as having "sided with the government[.]" Wyatt additionally points to his February 13 filing, in which he argued that Sanders was working with the government against Wyatt's interest, as evidence of the breakdown in the relationship.

We disagree that Wyatt was deprived of counsel and that the district court had a duty to construe Wyatt's submission as a motion to substitute counsel. Sanders's representation of Wyatt began on October 2, 2018, when Wyatt fired his previous attorney and hired Sanders. Sanders represented Wyatt throughout the plea process and sentencing, and his advocacy continued throughout the restitution process. The government initially requested a total of $202,000 in restitution, which was reduced to $129,850 following Sanders's negotiation with the government and his substantive arguments against the government's figures. Yet Wyatt contends that this representation was unsuccessful because, following the February 7, 2020 hearing, Sanders moved to withdraw and apparently stopped working on the case. But by the time that hearing concluded and at the time Sanders moved to withdraw, the record as to the proper restitution figure was thoroughly developed. The government's calculations had already been detailed, and Sanders had methodically challenged the bases for the government's figures. By the time Sanders moved to withdraw, his representation of Wyatt was complete. The district court analyzed Sanders's arguments (along with Wyatt's subsequent pro se arguments) and awarded a total of $95,075 in restitution, more than $100,000 less than the government's initial restitution request.

Furthermore, the district court had no duty to construe Wyatt's pro se February 24 motion for more time as a motion for substitute counsel. Wyatt complained about Sanders's representation (which proved to be effective), but that is not a request for new counsel. It is common practice for convicted defendants to complain at some point about their attorney's representation. To require district courts to construe such complaints as requests to substitute counsel is asking too much. Wyatt did not ask for new counsel and did not say near enough for the district court to have construed his motion as he now suggests. Moreover, although the district court had no duty to do so—because Wyatt was still represented by Sanders until the court granted Sanders's motion to withdraw in its order setting the amount of restitution—the district court nonetheless considered Wyatt's pro se substantive challenges to the government's restitution submissions.

Wyatt's right to counsel challenge does not fall neatly within any existing framework for analysis, as appellate counsel appears to recognize in briefing. Wyatt correctly notes that if we were reviewing the denial of a motion to substitute, he would bear the burden of showing prejudice arising from the district court's denial. In that vein, Wyatt argues that because he was completely denied counsel, we should draw from *United States v. Cronic*, presume prejudice, and reverse. 466 U.S. 648, 659 (1984). This case, however, does not fall within the *Cronic* framework, as Wyatt was represented during the restitution proceedings in all substantive respects. The only government filing following Sanders's motion to withdraw dealt primarily with the district court's admonition of the government attorneys for failing to follow the statutory deadlines concerning restitution. Moreover, the government's substantive arguments concerning restitution mirrored the

previous arguments the government had made, except for the reduction in the amount sought for AV-3 in response to Sanders's argument at the February 7 hearing.

Given the particular facts in this case and the well-developed record on the restitution figures, we reject Wyatt's assertion that his own eleventh-hour maneuvering with respect to counsel violated his constitutional rights.

D

Finally, Wyatt argues that the district court erred by entering the restitution order outside his physical presence. Wyatt presses three separate arguments on this point. The first relies on Federal Rule of Criminal Procedure 43(a)(3), the second relies on 18 U.S.C. § 3553(c), and the third is that the procedure in this case violated his due process rights. None of these arguments has merit.

Rule 43(a)(3) states, in relevant part: "Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at … sentencing." In *Stivers*, we rejected the same argument that Wyatt makes here—that Rule 43(a)(3) requires restitution be ordered in the defendant's presence—because 18 U.S.C. § 3664(d)(5) states, in part, that among the Federal Rules of Criminal Procedure, only Rule 32(c) is applicable to restitution proceedings. 996 F.3d at 801. *Stivers* forecloses Wyatt's Rule 43 argument, as the parties have recognized.

Before oral argument, the government submitted a letter of supplemental authority citing *Stivers.* In response to that letter, Wyatt argued that he raised an argument that was not reached in *Stivers*, namely that the district court's restitution order violated 18 U.S.C. § 3553(c). Section 3553(c) states, in relevant part:

> The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence[.] … If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor.

But § 3553(c) offers Wyatt no help. The district court ordered full restitution, which is evident because it noted that it was proceeding pursuant to the applicable mandatory restitution statutes, which require an award of the "full amount of the victim[s'] losses." 18 U.S.C. § 1593(b)(1); see Restitution Order, R. 92 at 4 ("The Supreme Court explained that the primary purpose of the statute was 'to ensure that victims of a crime receive full restitution[,]'" citing *Dolan v. Unites States*, 560 U.S. 605, 612 (2010).). Wyatt offers no support for the proposition that simply because the government initially requested more restitution—but ultimately did not meet its burden on each claimed loss—that the award constituted "partial" restitution. Full restitution is calculated by reference to the victims' losses that the government can prove. Wyatt's successful challenges to specific facts underlying the government's initial restitution requests (such as challenges to specific days that the women could not have been working for Wyatt, which the district court excised) did not convert restitution to a partial award, which was foreclosed by the mandatory requirement that the district court order full restitution.[7]

_____

[7] To the extent that § 3553(c)'s requirement that partial and no-restitution orders be read in open court at the time of sentencing may conflict with the restitution procedures laid out in 18 U.S.C. §§ 3663A or 3664, we need

Finally, Wyatt attacks at length *United States v. Newman*, which held that restitution does not "qualif[y] as a criminal punishment." 144 F.3d 531, 538 (7th Cir. 1998). As Wyatt points out, several other circuits have disagreed with *Newman*, and he now asks us to reverse course and definitively hold that restitution is a criminal penalty. We need not reach this issue because whether or not a restitution order is a criminal punishment does not alter our resolution of his physical presence argument. Wyatt also briefly argues that, assuming restitution is civil in nature, due process requires that a hearing be held in which live testimony is heard. Wyatt does not cite to any relevant authority supporting his position on this point or explain how this argument is relevant to his presence argument.

The district court did not err in this case by awarding restitution outside of Wyatt's presence.

\* \* \*

To conclude, Wyatt was well represented in the proceedings before the district court. The district court carefully calculated the restitution for Wyatt's sex trafficking victims, and no reversible error occurred in the process.

AFFIRMED

---

not address it here because the district court ordered full restitution. See *Stivers*, 996 F.3d at 802.