In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2008

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LUIS ARROYO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cr-805-1 — **Steven C. Seeger**, *Judge.*

ARGUED APRIL 19, 2023 — DECIDED JULY 28, 2023

Before HAMILTON, BRENNAN, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Former State Representative Luis Arroyo accepted thousands of dollars in bribes to promote sweepstakes-gaming interests in the Illinois legislature and executive branch. When the government uncovered the bribery scheme, Arroyo was indicted and pleaded guilty to wire fraud. The district court sentenced him to 57 months' imprisonment and ordered that he forfeit $32,500 in bribe money.

On appeal, Arroyo argues that the district judge committed several errors at sentencing. First and foremost, Arroyo contends that the judge erred by finding his 57-month sentence necessary to deter public corruption when the record lacked empirical evidence supporting that conclusion. We've rejected this argument before and do so again today. District judges need not marshal empirical data on deterrent effects before considering whether a sentence adequately deters criminal conduct. The judge presumed that public officials are rational actors who pay attention when one of their own is sentenced. That presumption was reasonable, and the judge did not err when he justified Arroyo's sentence with the logic of general deterrence—that sentences influence behavior at the margins. Arroyo also contends that the judge erred by deeming several of his allocution statements aggravating and ordering him to forfeit too much money. These arguments lack merit, too, so we affirm.

I

Luis Arroyo served in the Illinois House of Representatives from 2006 to 2019. While in office, Arroyo also managed a lobbying firm. From November 2018 until October 2019, Arroyo's firm received $32,500 in checks from James Weiss's sweepstakes-gaming company. Arroyo admitted that he received payments from Weiss's company in exchange for his official support for the sweepstakes industry in the General Assembly. Despite never expressing a view on sweepstakes gaming before November 2018, Arroyo began pushing for sweepstakes-friendly legislation and encouraging other legislators and executive-branch officials to support the same. All the while, Arroyo concealed his financial arrangement with Weiss.

In August 2019, after failing to pass sweepstakes legisla-
tion, Arroyo and Weiss sought to enlist a state senator in their
scheme. In a meeting with the senator, Arroyo admitted to re-
ceiving payments from Weiss for advancing sweepstakes-
gaming interests in the General Assembly, asked the senator
to sponsor a gaming bill in the Senate, and promised that the
senator would be paid for doing so. Unbeknownst to Arroyo
or Weiss, the senator was working with the government and
wearing a wire. Three weeks later, Arroyo gave the senator a
$2,500 check from Weiss's company and promised "we're go-
ing to write you a check per month" for a year.

In October 2019, the government charged Arroyo by com-
plaint with bribery under 18 U.S.C. § 666(a)(2). A year later, a
grand jury indicted Arroyo on one count of bribery, three
counts of wire fraud, and one count of mail fraud. See *id.*
§§ 666(a)(2), 1341, 1343, 1346. In November 2021, Arroyo
pleaded guilty to one count of wire fraud.

The case proceeded to sentencing, where the district judge
emphasized the seriousness of Arroyo's offense and the need
to deter other public officials who "might be tempted to sell
out the public" like Arroyo. Noting that public officials were
watching and listening, the judge wanted "to make sure that
they hear a message loud and clear" that "[p]ublic corruption
isn't worth it." The judge then put the issue in economic
terms:

> From a supply-and-demand perspective, the
> length of the sentence matters. The lower the
> cost—in other words, the lower the sentence—
> the more public corruption you're going to get.
> Public officials are rational actors. They think
> about the costs and benefits of public

corruption. They think about how likely it is
they're going to get caught. They think about
what will happen to them if they do get caught.
They think about the costs and benefits of cor-
ruption.

The judge emphasized the need "to make sure that the costs
of public corruption are high enough to deter other people
from engaging in public corruption."

After weighing the other sentencing factors under 18
U.S.C. § 3553(a), as well as aggravating and mitigating facts in
the record, the judge imposed a sentence of 57 months—the
top end of Arroyo's Sentencing Guidelines range. The judge
also ordered Arroyo to forfeit $32,500, concluding that all of
the payments Arroyo's lobbying firm received from Weiss's
company were bribes. Arroyo appeals, challenging his sen-
tence on procedural grounds and the forfeiture amount.

## II

## A

Arroyo argues that the district judge's reliance on general
deterrence amounted to procedural error. We review proce-
dural challenges to sentences de novo. See *United States v. Lla-
nos*, 62 F.4th 312, 316 (7th Cir. 2023). A district court procedur-
ally errs when it fails to "adequately explain its sentence in
reference to the criteria set out in 18 U.S.C. § 3553(a)." *United
States v. Saldana-Gonzalez*, 70 F.4th 981, 984 (7th Cir. 2023). We
question whether Arroyo's challenge is, in fact, procedural
and subject to de novo review. But because there was no error
under any standard of review, we need not answer that ques-
tion.

Sentencing judges must consider, among other things, the need for a sentence to "to afford adequate deterrence to criminal conduct."18 U.S.C. § 3553(a)(2)(B). By including general deterrence as a required consideration, Congress embraced the idea that criminal sentences influence behavior in society. See *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). The idea of general deterrence, put simply, is that the longer the sentence, the more it will discourage similar criminal conduct by others.

Arroyo argues that the judge procedurally erred because the record lacked empirical evidence showing that public officials consider sentences or engage in cost-benefit analysis when it comes to corruption. Arroyo says the judge's analysis was therefore purely speculative and unreliable. The judge, Arroyo further argues, "relied almost exclusively" on general deterrence while ignoring important mitigating facts like his age and lack of criminal history.

Once again, we reject outright the contention that the district judge's "emphasis on general deterrence was unreasonable because the theory that longer sentences deter illegal activity lacks empirical support." *United States v. Hatch*, 909 F.3d 872, 876 (7th Cir. 2018). Section 3553(a)(2)(B) requires judges to consider general deterrence when fashioning a sentence, and nothing in the statute suggests that empirical findings are a prerequisite. Nor did the district court err by expressing Congress's logic in economic terms. General deterrence is, after all, an economic theory of punishment: "Where the profits to be made from violating a law are higher, the penalty needs to be correspondingly higher to achieve the same amount of deterrence." *United States v. Cavera*, 550 F.3d 180, 196 (2d Cir. 2008) (en banc) (citing Richard A. Posner, *Economic Analysis of*

*the Law*, § 7.2 (3d ed. 1986)). What's more, public officials are the "prime candidates for general deterrence" because they "act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity." *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (quoting *United States v. Warner*, 792 F.3d 847, 860–61 (7th Cir. 2015)). Bribery is a premeditated crime—those tempted to sell out the public have plenty of time to weigh the risks and rewards before doing so. The district judge did not err by reasonably presuming that public officials consider the criminal sentences of other politicians, and that a longer sentence for Arroyo was necessary to deter corruption at the margins.

Zooming out, Arroyo also contends that the judge erred by focusing nearly exclusively on general deterrence and by ignoring certain mitigating factors. That did not happen. The judge methodically walked through the § 3553(a) factors and reasonably explained how he weighed each factor. The judge detailed why he considered Arroyo's public corruption offense extremely serious, as well as the need to promote respect for the law. See 18 U.S.C. § 3553(a)(2)(A). He also found that specific deterrence was not a strong factor because Arroyo was unlikely to hold office again. See *id.* § 3553(a)(2)(C). To be sure, the judge found general deterrence particularly important in fashioning Arroyo's sentence, but the judge did not do so to the exclusion of the other § 3553(a) factors. The judge's assessment of the § 3553(a) factors "fell well within the bounds of reasonableness," *United States v. Campbell*, 37 F.4th 1345, 1353 (7th Cir. 2022), and it is not our job to reweigh them on appeal.

Nor did the judge ignore mitigating facts. The judge noted that Arroyo's age would make incarceration difficult and

found his lack of criminal history mitigating. And the judge highlighted Arroyo's challenging upbringing, years of public service before his corruption, devotion to his family, and the dozens of letters submitted supporting Arroyo. In short, the judge adequately addressed all of Arroyo's arguments in mitigation, committing no procedural error. And the judge did not abuse his discretion by concluding that mitigating factors were outweighed by the seriousness of Arroyo's offense and the need for general deterrence. See *United States v. Miedzianowski*, 60 F.4th 1051, 1056 (7th Cir. 2023).

Relatedly, Arroyo argues that the district judge erred by deeming his allocution aggravating after promising that his statement would not be held against him. Neither of these things happened. First, the judge never assured Arroyo that his statements would not be held against him; the judge simply advised Arroyo of his Fifth Amendment right and told Arroyo that remaining silent would not be held against him. More to the point, Arroyo's argument fails because the judge did not find his allocution aggravating. Arroyo points to the following excerpt from the sentencing transcript: "I've considered your statement, your allocution. You didn't have to address the Court. You did. I considered that. So those are the aggravating factors that I've seen so far." When read in isolation, one might come away with the misleading impression that the judge found Arroyo's allocution aggravating. But when placed in context, it becomes clear that the judge did no such thing. In the preceding pages, the judge emphasized the seriousness of Arroyo's offense, the need for deterrence, and that Arroyo was in a leadership position while accepting thousands in bribes. The judge then paused to note that he had considered Arroyo's allocution, before referring back to these aggravating factors. Despite the abrupt transition,

nothing in the transcript suggests that the judge concluded that Arroyo's statement itself was aggravating. The judge did not say that Arroyo had attempted to avoid responsibility or minimize his role. To the contrary, while expressing frustration with the inconsistent positions taken in Arroyo's filings, the judge stated that he would not hold that against Arroyo and took Arroyo at his word that he "accept[ed] responsibility completely" during his allocution.

B

Finally, we turn to forfeiture. The government bears the burden of establishing the forfeiture amount by a preponderance of the evidence. *United States v. Smith*, 770 F.3d 628, 637 (7th Cir. 2014). We review the district court's factual findings in adjudicating the forfeiture amount for clear error, see *United States v. Balsiger*, 910 F.3d 942, 956 (7th Cir. 2018), and "we will reverse only if our review leaves us with the definite and firm conviction that the district court made a mistake," *United States v. Bogdanov*, 863 F.3d 630, 633–34 (7th Cir. 2017).

Arroyo has not met that high bar. He contends that the record unequivocally establishes that some of Weiss's payments to his firm were not bribes but payment for legitimate work lobbying the Chicago City Council. The judge rejected this argument for several reasons. For starters, not only did the timing of the payments coincide with Arroyo's entry and participation in the corrupt scheme with Weiss, but Arroyo also never disclosed to the City any of Weiss's payments. The judge found it more likely than not that Arroyo was actively concealing the payments he received from Weiss. Further, when discussing the scheme with the senator, Arroyo stated that he'd been getting paid $2,500 a month for his role. Putting it all together—the timing, the concealment, and Arroyo's

own statements about his take—the judge concluded that it was more likely than not that all of the payments Weiss's company made to Arroyo's lobbying firm, totaling $32,500, were bribes. Based on the evidence, the judge reasonably rejected Arroyo's contention that some of Weiss's payments were for legitimate lobbying work, while others were illegitimate bribes. Because nothing in the record compels the conclusion Arroyo urges, there can be no clear error.

In sum, there was no procedural error because the judge appropriately considered the need for general deterrence and weighed it against the other § 3553(a) factors and Arroyo's arguments in mitigation. And the judge's forfeiture findings are supported by the record and not clearly erroneous. Because Arroyo has not identified an error, we affirm his sentence.

AFFIRMED